DREHER, Appellant, vs. ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA, Respondent.

*December 14, 1920—January 11, 1921.*

*Insurance: Death by external violence: Evidence: Opinion of expert not based on fact.*

1. In an action on an accident policy insuring only against death by external, violent, and accidental means and excepting death from asphyxiation, testimony by three witnesses that they saw a reddish spot on the temple of deceased a short time after his death and an opinion by a physician that a blow had caused the death are insufficient to warrant a finding that death was caused by an external and violent blow and not by asphyxiation from automobile fumes which the evidence showed were present at the time and place of death.

2. The opinion of an expert must be based upon facts, proved or assumed, sufficient to form a basis for the opinion, and cannot be invoked to supply the substantive facts necessary to support the conclusion; so that an opinion by a physician, based only on evidence that witnesses had seen a reddish spot on the temple of deceased, without evidence of any external cause for such spot, that the death of deceased was due to a blow which caused the spot, is not evidence sufficient to take the question to the jury.

APPEAL from a judgment of the circuit court for Milwaukee county: W. R. FOLEY, Judge. *Affirmed.*

Action on an accident insurance policy to recover death

benefits.    The defendant is an insurance corporation organized under the laws of Ohio, licensed to do business in Wisconsin and to issue policies of accident insurance.    On the 31st day of March, 1902, it issued to one Charles Dreher an accident insurance policy or certificate, under and by virtue of the terms of which the defendant promised to pay to *Josephine F. Dreher,* the plaintiff, $6,300 in case of the death of the said Charles Dreher caused by accident.

On the 17th day of December, 1917, said Charles Dreher and plaintiff were living at Theresa, Wisconsin.    They owned a Cadillac touring car, kept in a garage located back of and near their dwelling.    They contemplated a trip to Milwaukee the next morning, which was the subject of conversation between them in their back yard.    Upon *Mrs. Dreher* telling him that he better get the car ready for their trip he went into the garage, and she into the kitchen of their house for the purpose of preparing lunch.    She remained in the kitchen a few minutes and concluded to ask her husband what he wanted for lunch.    She went to a window on the side of the garage and called to him, but receiving no response she entered the garage through the door, saw her husband sitting on the fender of the automobile, on the right-hand side, with his head resting on the top of the fender.    She touched his shoulder; he looked up and, apparently, tried to speak, but did not.    She tried to lift him, but was unable to do so because of his weight.    She then called for help, and in a little while two men came and carried him out and laid him on the grass.    He was apparently dead at that time.    Two doctors, Lengenfeld and Stoye, arrived shortly thereafter.    They worked over him for about half an hour in an effort to resuscitate him, but were unable to do so.

When *Mrs. Dreher* entered the garage the engine was running.    The hood on the right-hand side of the car was open. One end of a tube for inflating tires was attached to the engine, and he was holding the tube in his right hand.    He

had not been in the garage to exceed five minutes when she found him. The two men who carried deceased from the garage testified that it was full of blue smoke that was coming from the exhaust pipe of the engine and that there was considerable odor. One of these men testified that he was affected for a couple of days afterwards by the fumes coming from the engine.

Doctor Stoye filed a death certificate and gave as the cause of death asphyxia, due to the accumulation of gas in the garage while the engine was running. Upon the trial Doctors Lengenfeld and Stoye both testified that in their opinion the cause of death was as stated in the death certificate. *Mrs. Dreher* filed proof of death with the defendant company on October 15, 1917, and gave the cause of death as "overcome by fumes issued from the running automobile engine and, according to the doctor, asphyxia, overcome by fumes of running engine in garage." The company denied liability on the ground that death from such cause was not included in the coverage of the policy.

Upon the trial three witnesses testified that they viewed the body of the deceased in the afternoon of the day of his death and noticed a reddish spot about the size of a twenty-five-cent piece on the right side of his temple. The existence of this spot was denied by the two men who carried him from the garage, the two doctors who were summoned and who endeavored to resuscitate him, as well as by the undertaker.

Doctor Joseph F. Quinn, a practicing physician, in response to a hypothetical question testified that in his opinion the death of the deceased was attributable to the external signs of violence over the temple. In response to a question as to how a mark of that character could be made upon the temple he replied, "By some external violence." Doctor P. F. Gaunt also testified to "reasonable probability that an injury in that location that would produce a mark as described might have produced death." "This mark could

have been caused by external violence, but I would not be willing to say that it. was caused by external violence. If it was caused by external violence, such external violence might have caused the death." .

The foregoing is the extent of the testimony produced by plaintiff to show that the death was caused by violent, external, and accidental means. At the conclusion of the testimony the court directed a verdict in favor of the defendant. From the judgment entered thereon plaintiff appealed.

For the appellant there was a brief by *William E. Burke* and *Chas. F. Thompson,* both of Milwaukee, and oral argument by *Mr. Burke.*

For the respondent there was a brief by *Robert N. McMynn* of Milwaukee, attorney, and *John A. Millener* of Columbus, Ohio, of counsel; and the cause was argued orally by *Mr. McMynn.*

OWEN, J. The accident insurance policy or certificate upon which the action is based indemnified deceased "against the results of bodily injury hereinafter mentioned effected through external, violent and accidental means, herein termed the accident, which shall be occasioned by the said accident alone and independent of all other causes." Plaintiff forwarded to the company proofs of death on blanks furnished by it, in which it was stated that the death of the deceased was due to "asphyxia, overcome by fumes of running automobile engine." The company denied liability, by reason of the express provision in the certificate that benefits thereunder should not extend to death, disability, or loss resulting from inhaling of gas or asphyxiation (voluntary or involuntary, conscious or unconscious). Without amending the proofs of death or assigning a different reason for the cause of death, plaintiff commenced this action by service of summons on the 16th day of January, 1918. Defendant answered, alleging that deceased met his death as the result of inhaling gas and asphyxiation, and that there

was no external, visible mark of accident upon his body, and that external, violent, and accidental means producing bodily injury were not the proximate, sole, and only cause of the death. Thereafter and on the 19th day of November, 1919, and before the trial of the action, plaintiff attempted to amend the proofs of death by causing to be served upon defendant's attorney a notice signed by her attorney to the effect that "the plaintiff amends the proofs of accident heretofore furnished by her to modify, amplify, correct, and explain them in the particulars pointed out and in conformity with information, data, and material evidentiary facts not within the personal knowledge or recollection of the plaintiff at the time of the making out of said proofs of accident;" and, among other things, it was stated in said notice that the cause of the death of the deceased, which was given in the original proofs of death as asphyxia, overcome by fumes of automobile engine in garage, was amended to read, "blow upon right temple of head." Whether it was so appreciated at the time of the commencement of the action, the plaintiff evidently understood at the time of trial that in order to recover it was necessary for her to prove that the deceased came to his death by reason of external, violent, and accidental means. Her only evidence in support of this fact was the testimony of three witnesses who claimed that they viewed the body of deceased during the afternoon of the day on which he died and that they observed "a reddish or pinkish red spot" on the side of his temple about the size of a twenty-five-cent piece. There was no evidence as to the cause of the spot. There was no evidence that he was struck by anything. There was no fact proven from which it could be inferred that he had sustained a blow on the temple. There was no fact or circumstance connected with the surroundings in which he was found to indicate that he could in any manner have been struck with any object on the side of his head.

It is suggested that the tube used for the inflation of the

tires might have become engaged with the fan, causing the metal gauge on the end thereof to strike the deceased with violence. However, the tube gave no evidence of having come in contact with the fan, and it seems incredible that it could have become entangled therewith without resulting evidence thereof appearing upon the tube. Assuming nothing more than that there was a reddish spot upon his temple three or four hours after his death, Doctor Quinn testified that in his opinion death was due to the external signs of violence over the temple. The court held that this evidence was not sufficient to authorize or support a finding by the jury that the deceased came to his death by violent, external, or accidental means, and directed a verdict in favor of the defendant.

On this appeal plaintiff contends that the evidence above referred to is sufficient to take the case to the jury. If it be conceded that the spot on the temple evidenced external violence, there is nothing to indicate the severity of the blow which caused it. It is a matter of common knowledge that it requires a certain amount of force applied to the temple in order to cause death. There is an entire lack of evidence in this particular. Neither is there evidence of any *post-mortem* conditions from which it may be judged whether he was struck on the temple, or of the force of a blow which he might have received on the temple. The skull was not fractured. There was no evidence of a hemorrhage of the brain, nothing at all except that he was dead and that this red spot was found upon his temple.

The only evidence, therefore, from which it may be inferred that external injury caused the death is the evidence of the doctor that a blow which caused the mark on his temple might have caused death, and that because he was dead it was his opinion that he died as the result of such a blow. The opinion of the physician as to the cause of death is invoked to supply the substantive facts necessary to support his conclusion. This cannot be done. It is the func-

Dreher v. United Commercial Travelers, 173 Wis. 173.

tion of opinion evidence to assist the jury in arriving at a correct conclusion upon a given state of facts. To endow opinion evidence with probative value it must be based on facts proven or assumed, sufficient to enable the expert to form an intelligent opinion. The opinion must be an intelligent and reasonable conclusion based on a given state of facts and be such as reason and experience have shown to be a probable resulting consequence of the facts proved. The basis of the conclusion cannot be deduced or inferred from the conclusion itself. In other words, the opinion of the expert does not constitute proof of the existence of the facts necessary to support the opinion. See *Bucher v. Wis. Cent. R. Co.* 139 Wis. 597, 120 N. W. 518, where many cases are reviewed.

Doctor Quinn may be credited with the expression of his honest opinion concerning the cause of the death of the deceased. His opinion in that respect, however, could be nothing more than mere intuition or conjecture. It had no probative force, because not based on facts which were necessary to give to it that degree of certainty required for the support of verdicts.

It follows that there was no evidence upon which the jury could have found that the death of the deceased was the result of violent, external, and accidental means, and the verdict in favor of the defendant was properly directed.

*By the Court.*—Judgment affirmed.