McGaw, Respondent, vs. Wassmann and another, Appellants.*

*March 4—March 31, 1953.*

* Motions for rehearing denied, without costs, on June 2, 1953.

For the appellant Joseph H. Wassmann there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur Wickham, Richard S. Gibbs,* and *Robert F. Boden* of counsel, all of Milwaukee, and oral argument by *Mr. Wickham.*

For the appellant Checker Cab Company there was a brief by *Bendinger, Hayes & Kluwin* of Milwaukee, and oral argument by *John A. Kluwin.*

For the respondent there was a brief and oral argument by *Cornelius P. Hanley* of Milwaukee, attorney, and *Henry P. Hughes* of Oshkosh of counsel.

Fritz, C. J.    The plaintiff, Helen McGaw, was injured while riding as a guest in the automobile of the defendant, Joseph Wassmann, on the Bluemound road at 2:30 a. m. on August 8, 1948.  At the place of the accident, the width of the road was 62 feet, 2⅜ inches.  The driver of the defendant Checker Cab Company had stopped to discharge two passengers at the north curb of the road, with the right wheels of the cab in excess of the 12 inches from the curb, which was in violation of sec. 85.19 (2) (a), Stats., which provides:

"No person shall park, stop, or leave standing any vehicle, whether attended or unattended, upon any street unless parallel to the edge of the street, . . . and with the right wheels of the vehicle within 12 inches of the curb or edge of the street except as provided in paragraphs (b) and (c). . . ." (which are in relation to situations immaterial to this case).

The passengers had not yet alighted from the cab, but were intending to do so, when the rear of the cab was struck, and driven forward a car length or more, by Wassmann's automobile, which he was driving.  The position of his car after the accident was to the rear of the cab, approximately three to five feet farther out from said curb than it would have been if the cab had been parked at the curb.  Wassmann testified that the cab had been stopped when his car struck it almost squarely in the rear and forced it to the left and forward; and that when the cab came to a standstill it was immediately to the left of another parked automobile.  As a result of Wassmann's car suddenly colliding with the cab, the plaintiff, Mrs. McGaw, was suddenly thrown forward in Wassmann's automobile and received four cuts about the face.  At the scene of the accident, she was helped out of Wassmann's automobile, and taken to a hospital.

In a special verdict, the jury found that at or just prior to the collision, Wassmann was not negligent with respect to lookout, but was causally negligent with respect to the management and control of his automobile, and with respect to

speed; that Sleski, the driver of the taxicab, was causally negligent in parking the cab more than one foot south of the north curb of the road. The jury assessed plaintiff's damages at $1,400 for loss of earnings; $6,500 for facial disfigurement and pain and suffering; and $15,000 for loss of hearing.

On motions after verdict, each of the defendants moved for an order dismissing the complaint, and in the event of the denial of said motions, each defendant moved the court to change the answers to certain questions in the special verdict, including the jury's findings which assessed plaintiff's loss of earnings at $1,400; an award for facial disfigurement and pain and suffering at $6,500, and to reduce such amounts as in fairness and law would reasonably conform to the evidence; and to strike completely from the verdict the jury's answer in reference to the amount assessed for loss of hearing, on the ground that there was no evidence to sustain that finding.

In the alternative, Checker Cab Company moved for an order setting aside the verdict and for a new trial upon the following grounds: That the court erred in failing to instruct the jury in accordance with sec. 270.21, Stats. 1951; that the verdict is perverse and contrary to law and the evidence; and that the improper remarks of plaintiff's counsel during the trial were inflammatory and that the jury's verdict reflects passion and prejudice; that the damages awarded the plaintiff are excessive; and that in the interests of justice, a new trial is necessary. All of the motions were denied by the trial court and judgment was entered in plaintiff's favor for $22,900 and costs.

Dr. Harold Cannon was the only medical witness produced by the plaintiff on the trial, and he made his first examination of plaintiff on March 25, 1952, three years after the collision. The examination was conducted at his office between 1 and 2:30 p. m. during a recess in the trial of the action, and was made for the purpose of his testifying on her behalf.

He testified to the following effect: That at the time of the trial, Mrs. McGaw was suffering from loss of hearing, which amounted to 63 per cent in the right ear, and 78 per cent in the left ear; that, aside from any trauma, there was another cause of the progressive deafness which was known as otosclerosis; that said disease was produced by a cause unknown to the doctor, and that the progressive deafness suffered by plaintiff was due at least in part to the sclerotic condition which had nothing to do with the accident. He testified in answer to a hypothetical question that he had an opinion based upon a reasonable degree of certainty that the collision was the proximate cause of the plaintiff's present condition as to her hearing; and that if she suffered trauma, and it was severe enough to render her unconscious, the residuals of that trauma would contribute to the diminution of plaintiff's hearing. He also testified that his examination revealed another cause of deafness *i. e.,* otosclerosis, and that it is a progressive deafness and will probably get worse with the passage of time. Dr. Cannon testified also that in examining plaintiff he found four scars on her face, which were admittedly sustained as a result of the accident. One scar was in the upper part of the orbit and extended laterally across the eyebrow, and was approximately one and one-fourth inches. Another scar extending in the inner part of the orbit across the eyebrow and up toward the forehead was approximately three-fourth inches long. There was also a scar on the right side of plaintiff's chin about one and one-half inches long extending from the middle portion of the mandible to the center line of the chin. He testified that the scars were permanent in nature and had the ordinary appearance of scars after sutures, but that in his opinion, the appearance of the scars could be improved by plastic surgery, which would require hospitalization.

Mrs. McGaw testified that prior to the accident, she had not been troubled with any loss of hearing, and there was no evidence as to whether or not there was a measurable loss of

hearing prior thereto. There was no evidence of the trauma, which was assumed for purposes of the hypothetical question, aside from an observation by Dr. Cannon that in his opinion the unconsciousness was caused by the "trauma;" and he did concede that such unconsciousness could result without trauma.

Briefly stated, the evidence established that the plaintiff received four cuts about the face; that at the scene of the accident she was helped out of Wassmann's automobile; that she spoke to a witness at the scene of the accident; that one witness was of the opinion that she was unconscious at that time; and plaintiff testified that she did not remember anything until she was in the hospital. There was, however, no evidence of any blow to the head sufficient to have caused unconsciousness. That she simply may have fainted as the result of the shock of the accident, seems quite probable. Likewise, there is no evidence that the accident aggravated or set in motion the sclerotic condition. Neither is there any evidence as to the degree to which the sclerosis or trauma contributed to the plaintiff's present condition. The appellants' contention is that the evidence in the record is inadequate to support the jury's award of $15,000 for loss of hearing; that the verdict was in fact too speculative and should not have been submitted to the jury, or should have been set aside upon the return of the verdict.

Dr. Cannon's testimony was apparently based upon three assumptions, without which his opinion and the verdict based thereon cannot be sustained. They are: (1) That plaintiff's unconsciousness was the result of a blow to the head, but there is no evidence of any such blow; (2) that there was a brain injury sustained as a result of the trauma and the unconsciousness—but in regard to that assumption, the doctor conceded that there may be unconsciousness without any brain injury; and (3) that as the result of a brain injury, plaintiff suffered some loss of hearing. The form of the med-

ical testimony makes it clear that the accident would not cause loss of hearing in the absence of a brain injury.

It is well-established law that the opinion of an expert medical witness, testifying on behalf of an injured person, is acceptable only if the facts assumed in a hypothetical question are proved to a reasonable degree of certainty. Thus, in a normal case, unless all facts upon which the medical witness based his conclusions are supported by adequate evidence, the conclusion itself must fall.

As stated in *Will of McGovern*, 241 Wis. 99, 107, 3 N. W. (2d) 717:

"In judging testimony given by physicians as to their opinions upon certain facts assumed in the questions put to them we must bear in mind that the opinions neither establish nor tend to establish the truth of the facts upon which they are based. The matters assumed are to be proven. Such opinions are pertinent only in so far as the hypothesis upon which they are based is true and correct. Any infirmity in the hypothesis attaches to the answer predicated upon it."

The hypothetical question put to Dr. Cannon assumed as one of the facts upon which his opinion was to be based that plaintiff sustained a blow to the head sufficient to cause unconsciousness and an injury to the brain. But the record is devoid of any evidence of such a blow, particularly of a blow sufficient to cause unconsciousness or a brain injury. The only evidence relating to a blow to plaintiff's head is Dr. Cannon's own testimony that in his opinion plaintiff's unconsciousness probably was the result of a blow to the head. Such evidence is clearly within the rule that a medical expert cannot testify as to the facts of the accident—as to how the wounds were inflicted—because such testimony is not within the province of scientific knowledge to which expert opinion testimony is limited. *Lyon v. Grand Rapids*, 121 Wis. 609, 618, 619, 99 N. W. 311. That being so, it

is contended that the medical expert was merely speculating and conjecturing as to the cause of the accident, and that the hypothetical question and answer thereto should, as a matter of law, be disregarded as the basis of any verdict within the rule of *Bucher v. Wisconsin Central R. Co.* 139 Wis. 597, 606, 120 N. W. 518, in which the court stated (p. 608):

"The verdict of a jury founded upon facts is entitled to great weight, and is almost conclusive upon this court if supported by any evidence. But the verdict of a jury founded only upon the opinion of experts concerning the cause of a condition, which condition is itself established by the opinion of experts, has no such weight. . . . So that obvious error of opinion, opinion based on insufficient data, or nonsense clothed in words of 'learned length,' may be disregarded by this court as a basis for supporting a verdict."

In the *Bucher Case, supra,* the court rejected the opinion of an expert founded upon the assumption of a blow to the head where "the severity of which is a matter of proof unknown to the physician except by remote inference."

Consequently, as the question in the present case assumes a blow sufficient to cause unconsciousness and a brain injury, the lack of any evidence to establish such blow, or resulting brain injury, and the further fact that the medical expert admitted that such unconsciousness could have resulted without any brain injury, compels the conclusion that the opinion of the expert must fail for lack of proof of the facts upon which his opinion was based.

In the case at bar, the expert's conclusion was based upon the existence of a trauma sufficient to have caused unconsciousness and an injury to the brain. However, if there was no brain injury, then there could be no brain-injury residual to cause a loss of hearing. In that situation, there are applicable and appropriate the conclusions stated in *Vogelsburg v. Mason & Hanger Co.* 250 Wis. 242, 258, 26 N. W. (2d) 678:

"The only thing upon which the experts base their conclusion as to the cause of either of such conditions is sought to be established by their own opinion that such condition did exist. Under these circumstances there is applicable the conclusion stated in *Bucher v. Wis. Cent. R. Co.* 139 Wis. 597, 606, 120 N. W. 518, that 'the verdict of a jury founded only upon the opinion of experts concerning the cause of a condition, which condition is itself established by the opinion of experts, has no such weight.' Likewise there are applicable the statements in *Dreher v. United Commercial Travelers,* 173 Wis. 173, 178, 179, 180 N. W. 815:

" 'The only evidence, therefore, from which it may be inferred that external injury caused the death is the evidence of the doctor that a blow which caused the mark on his temple might have caused death, and that because he was dead it was his opinion that he died as the result of such a blow. The opinion of the physician as to the cause of death is invoked to supply the substantive facts necessary to support his conclusion. This cannot be done. . . . The basis of the conclusion cannot be deduced or inferred from the conclusion itself. In other words, the opinion of the expert does not constitute proof of the existence of the facts necessary to support the opinion.' See also *Walraven v. Sprague, Warner & Co.* 235 Wis. 259, 292 N. W. 883."

Attorney Hanley's opening argument to the jury as counsel for plaintiff was apparently intentionally started to engender bias and prejudice in the minds of the jury, and to unduly arouse sympathy for the plaintiff. Prior to the time of the trial, plaintiff's son had been killed while serving in Korea as a soldier in the United States army, and in his argument to the jury plaintiff's attorney stated: "There is a monument erected to her in Korea in the form of a white cross." While such statement was not made without some provocation as a result of certain cross-examination by counsel for the defendant Wassmann, as hereinafter pointed out, such argument, nevertheless, was improper and an unwarranted emotional appeal to the jury, which was obviously intended to create bias and arouse feelings of sympathy and favoritism toward the plaintiff. Such conduct cannot be tol-

erated by this court. As stated in *Georgeson v. Nielsen,* 218 Wis. 180, 185, 260 N. W. 461:

"The situation is one that all too frequently arises. A remark is made by counsel, known by him to be improper, and made with intent and expectation that it will improperly influence the jury to the advantage of his client and the disadvantage of the opposing party. No extraneous evidence is needed to establish such intent. If such result is not intended, why are such remarks made?" See also *Hanley v. Milwaukee E. R. & L. Co.* 220 Wis. 281, 263 N. W. 638; *Markowitz v. Milwaukee E. R. & L. Co.* 230 Wis. 312, 284 N. W. 31; *DeRousseau v. Chicago, St. P., M. & O. R. Co.* 256 Wis. 19, 39 N. W. (2d) 764.

When plaintiff's attorney sought to have a physician, who was entitled to practice medicine and testify in Illinois courts but was not qualified to testify on trials in Wisconsin courts, the court properly ruled that he could not testify in this state.* Immediately plaintiff's attorney attempted to have the jurors infer that defendants' attorneys were wrongfully attempting to keep something from them, and in their presence stated: "It is very unfortunate that we didn't have the benefit of the Waukegan doctor. He was objected to by counsel at the rear table." That certainly was an obvious attempt to have the jury infer that something was being kept from them. Plaintiff's attorney continued: "It would have been very easy, I suppose, to bring in some doctor to say all of this girl's loss of hearing was due to this accident. They were not in a position to disprove it. They didn't bring a witness in this court and they had an Illinois doctor examine this girl in my office." That again was a misstatement of facts. The Checker Cab Company never had the plaintiff examined by any doctor.

Referring to defendants' attorneys Arthur Wickham and John Kluwin in his rebuttal argument, plaintiff's attorney stated: "One or the other of the twins would say to me, 'We had trouble bringing out from Dr. Cannon. . . .'" The de-

---

* See memorandum on motion for rehearing, post, p. 497. RE-PORTER.

fendants' attorneys properly objected to the plaintiff's attorney's apparent insinuations, but he continued stating: "Twin defendants. The two gentlemen, I will refer to you that way."

It suffices to say that the reference by plaintiff's counsel to the white cross in Korea—referring to a deceased son of the plaintiff; the reference to Attorneys Kluwin and Wickham as the twin defendants, leaving the inference that they were engaged in some ulterior motives toward the plaintiff; the constant reference to an Illinois doctor who had examined the plaintiff on behalf of the defendants, when, in fact, defendant Checker Cab Company knew nothing about such examination until the trial was in progress, were obvious attempts on the part of plaintiff's counsel to introduce bias and prejudice and inflame the jury. In disposing of similar situations, this court said in *Corti v. Cooney,* 191 Wis. 464, 471, 472, 211 N. W. 274:

"While the trial court ruled promptly and adversely to plaintiffs, no adverse ruling could remove the impression made upon the minds of the jury by the proceeding set out herein. . . . A reprimand to the attorney does not cure the wrong done to litigants. . . . The whole purpose and scheme of our judicial system is to administer justice and deal with all litigants in a fair and impartial manner. An attorney who from the vantage point which he occupies in our judicial system uses his position to prejudice and mislead the court or jury is guilty of a double wrong; he brings disrepute upon the administration of justice and he wrongs the citizen who is the victim of his misconduct."

The only cure for such unlawyerlike conduct on the part of plaintiff's counsel is a new trial. This court has granted new trials in many cases where the remarks by counsel were even less prejudicial and harmful. See *Rissling v. Milwaukee E. R. & L. Co.* 203 Wis. 554, 234 N. W. 879; *Georgeson v. Nielsen,* 218 Wis. 180, 184, 260 N. W. 461; *Hanley v. Milwaukee E. R. & L. Co.* 220 Wis. 281, 286, 263 N. W.

638; *Horgen v. Chaseburg State Bank,* 227 Wis. 510, 279 N. W. 33; and *DeRousseau v. Chicago, St. P., M. & O. R. Co.* 256 Wis. 19, 39 N. W. (2d) 764.

As was hereinbefore mentioned, plaintiff's counsel's reference in his opening argument to the "monument" erected to plaintiff in Korea "in the form of a white cross" (referring to the death of her son as a war casualty) was to some extent provoked by cross-examination of the plaintiff by Attorney Wickham, who was counsel for the defendant Wassmann. Upon her direct examination, plaintiff was asked to explain why her children had the surname of Sarano, while her own name was McGaw; and she answered that she had been married to Sarano first and later to McGaw. In his cross-examination, Mr. Wickham brought out the facts that the plaintiff had been married three times, having been married to a man by the name of Wood in between her marriages to Sarano and McGaw; that she had been divorced from the first husband and given an annulment from her third husband, McGaw; and that such third husband "was somewhat younger" than she. While part of this cross-examination was proper, a portion of it was entirely irrelevant and tended to embarrass and discredit plaintiff in the eyes of the jury.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

The following memorandum was filed June 2, 1953:

PER CURIAM (*on motion for rehearing*). On her motion for rehearing plaintiff's counsel contend that the following should be deleted from the opinion:

"When plaintiff's attorney sought to have a physician, who was entitled to practice medicine and testify in Illinois courts but was not qualified to testify on trials in Wisconsin courts, the court properly ruled that he could not testify in this state."

They express the fear that upon retrial the court will construe the language as a mandate to reject any offer of the testimony of an out-of-state physician. That was not intended. The question is left open for determination by the trial court upon the circumstances then appearing.

Motions for rehearing denied without costs.