STATE, Respondent, v. RICE, Appellant.*

*February 2—February 27, 1968.*

---

[28] *State v. Carter, supra,* footnote 27, at pages 89–91.
* Motion for rehearing denied, without costs, on May 7, 1968.

For the appellant there was a brief and oral argument by *Robert G. Roberts* of Racine.

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Joseph B. Molinaro,* district attorney of Kenosha County.

BEILFUSS, J.   Two issues are presented on this appeal:

1. Was the court's limitation of defendant's examination of the expert witnesses prejudicial error?

2. Was a remark by the court in ruling on an objection prejudicial to defendant's case?

In cross-examining Dr. Holt the defendant's counsel asked:

"*Q.* Let me ask you this. If when the body was brought in you had been given a history from the Coroner or somebody to the effect that this man had suffered several injuries or blows to the head, within the immediate period, prior to his death, what would have been your performing of autopsy under that kind of history?"

The trial court sustained the state's objection to this question on the ground that the question should be under the evidence in the record at that time. Defendant's counsel then formulated the following hypothetical question:

"*Q.* Doctor assuming the following history, one, that Mr. Nichols had been struck in the head with a fist prior to this shooting; that immediately following this striking

in the head he fell against a pool table, striking the table as he was falling; that thereafter within a few minutes he was again struck backhanded in the head, and knocked to the floor; and taking a further fact, that when he got off of the floor, he asked the question of the person who struck him, did you just hit me; taking the further fact that he then proceeded to choke this man that hit him by grabbing him around the neck bending him backward over a bar; taking the further fact that two substantially large fellows had to pull him off of this person he had his hands around his throat; that the violence was so great that he kicked or knocked one of these fellows to the floor; taking the further fact that the other fellow attempting to restrain him hit him in the head with his fist; taking the additional fact that he was finally bodily removed by these two large fellows from the premises and placed or at least stood, situated outside of these premises where this violence took place, and lay there for some seconds in an apparent semi-conscious or unconscious state; all of these facts assumed occurred prior to the time he was shot with the shotgun, now, doctor, given that set of facts for history would you have performed the pathology of the brain?"

This question was objected to by the state and the court sustained the objection, commenting:

"The hypothetical basis of the question is too complex to have included all the elements as testified to in the record so that it might be considered impossible for the doctor, pathologist, to have an answer under the evidence that hasn't been satisfactorily established for the question."

Defense counsel then elicited from Dr. Holt that had he received a history of injuries to the head of the victim he would have performed a more complete examination of the head:

"Q. If you were given more history, going back to my original question, a history of injury to this man's head, and without having examined his brain, doctor, can you say with a reasonable medical certainty that he died of a shotgun wound?"

The response was:

"If I had received that history I would have done a head examination."

This answer was not responsive to this question and counsel asked it again:

"*Q.* Yes. But now for instance let's assume injuries to the head, just for an instance, then as a specialist in your field with that history can you say with a reasonable medical certainty he died of shotgun wound?"

The state objected. The court sustained the objection stating it could not permit the doctor to speculate on how hard the blows to the victim's head were.

Defense counsel then attempted to ask hypothetical questions relating to the blows on the head, specifically asking the doctor again whether he would have done an examination if he had received a history of the head injuries. The prosecution objected that the questions were repetitious. The court sustained the objections but for the reasons that the hypotheticals did not contain such things as the severity of the blows, how the pool table was struck, and how the victim appeared after the alleged head injuries.

The last question to Dr. Holt by defense counsel, which the trial court would not allow, was:

"I am going to state a hypothetical to the doctor. Assuming a man has received a blow to the head from the fist of another; assuming this man fell against a pool table striking his head; assuming he was knocked down from a blow to the head from another; assuming he was knocked down from a blow by the fist from another; can you say whether or not with that history you would perform pathology of the brain?"

The court in rejecting this question stated that counsel was repeating himself and that the witness was not in a position to assume any fact not proven in the record.

The defendant contends that the foregoing rulings of the trial court unduly limited his right of cross-examination and, therefore constitute prejudicial error. As stated in *Simpson v. State* (1966), 32 Wis. 2d 195, 205, 206, 145 N. W. 2d 206, when resolving such an issue the premise to begin with is "that the scope of cross-examination in a criminal case lies to a great extent in the discretion of the trial court. The most recent pronouncement to this effect was in *O'Conner v. State* [31 Wis. 2d 684, 143 N. W. 2d 489] wherein it was stated:

" '. . . the degree and manner of cross-examination in criminal cases are matters lying largely in the discretion of the trial court.' "

And, as also stated in *Simpson v. State, supra,* at page 206:

"There is the further rule that great liberty and latitude are allowed in the cross-examination of expert witnesses. . . . However, the applications of this rule are often directed to such matters as the education of the expert witness, his practical experience, the extent of his observation outside his own work, as well as other cognate matters bearing directly on his ability as an expert. Upon such examination, hypothetical questions may go outside the record for the purpose of testing the skill of the witness."

A hypothetical question put to an expert witness on cross-examination, however, need not be limited in purpose to testing the skill of the witness. The opinion of the expert on direct examination by the prosecution is certainly subject to attack on cross-examination by assuming different facts than proposed by the prosecution, not only to test the skill and knowledge of the expert but to help the jury in determining the weight it should accord to the expert's testimony:

"When it comes to cross-examination of such expert witnesses, however, the rule is not so limited and, within

the field of the trial court's reasonable discretion, questions may properly be framed assuming quite a different state of facts than those appearing in the record for the purpose of testing the knowledge and skill of such witness *and the weight to be given to his testimony.* [Cases cited.] That an undue limitation of such right of cross-examination may be prejudicial error is pointed out in *Fernhaber v. Cream City C. Co.* 176 Wis. 75, 82, 186 N. W. 175." *Delap v. Liebenson* (1926), 190 Wis. 73, 82, 208 N. W. 937. (Emphasis supplied.)

The state contends that the questions asked by the defense were merely designed to elicit testimony that a possibility existed that the victim may have died of causes other than those previously testified to by such witness. However, it seems that this is the most direct way to attack the conclusions of the doctor on direct examination. Doctor Holt concluded the victim died of cardiovascular collapse due to trauma and blood loss and left the impression that this was caused by the shotgun wound. But Dr. Holt on cross-examination was noncommittal when asked if he was certain the victim died of no other cause than the shotgun blast.

Furthermore, Dr. Holt later admitted that cardiovascular collapse could result from a brain injury. He also testified that he had no way of knowing how much blood the victim lost. Under these circumstances it was an abuse of discretion for the court to disallow the defendant's pursual on cross-examination of the possibility of the victim dying of causes unrelated to the shotgun wound.

The defense also takes exception with the trial court's limitation of its direct examination of its own expert. In presentation of its case the defense introduced Dr. Francois Saculla as an expert witness and asked him the following hypothetical question:

"I want you to assume a man is intoxicated; that this man is struck on the head by 'A' with a blow with sufficient force to knock him backwards and down. Assume further that as he is falling down he struck his temple on

the edge of the pool table and then fell to the floor; that when he went to the floor this man and 'A' were scuffling. Assume further that a short time later this same man was standing talking to 'B' who was sitting on a bar stool; that 'B' struck him in the head back-handed with a force sufficient to knock him to the floor. Assume further that 'B' helped this man to his feet; that this man then asked 'B', did you hit me? That when 'B' replied in the affirmative this man grabbed 'B' by the throat with both hands and choked him to the point that 'B's' face took on a bluish color. Assume further that this man's face was white as he was helped off the floor; that he was grabbed from behind by 'C' and 'D'; that this man struggled with sufficient force to cause 'C' to fall to the floor. Assume further that 'D' then struck this man a blow on his head with his fist that caused him to cease struggling somewhat; that 'C' and 'D' then carried this man to the door, at which point 'C' let go of this man, and 'D' carried him out to the concrete porch and left him there. Assume further that some seconds later this man suffered a shotgun wound to the lower right jaw. Assume further that this man died. Now, assuming that all these fact are true, do you have an opinion as to whether or not the blows to the head of this man could have resulted in brain damage being suffered by this man to the extent that it would cause his death?"

The state objected to this question and the trial court sustained the objection because it called for speculation on the part of the witness. Specifically, the trial court felt the question did not convey the force of the various blows to the victim's head. In support of the trial court's ruling, the state has cited three civil cases all involving expert testimony where the force of a blow received by the plaintiffs could not be established. These cases, *Bucher v. Wisconsin Central Ry.* (1909), 139 Wis. 597, 120 N. W. 518; *Dreher v. United Commercial Travelers* (1921), 173 Wis. 173, 180 N. W. 815; *McGaw v. Wassmann* (1953), 263 Wis. 486, 57 N. W. 2d 920, 58 N. W. 2d 663, hold that where injuries complained of were sought to be established by opinions of experts through hypotheticals involving "blows," unless the force of the

blows could be included in the question, any conclusion from the witness would involve too much conjecture to have any probative value.

Applying rules of evidence drawn from civil cases to resolve the question here involved does not pay due respect to the basic concept that it is for the state to prove the crime beyond reasonable doubt. In the civil cases cited the plaintiffs were attempting to establish a claim for compensation against a defendant. The plaintiffs had the burden of establishing that claim and, quite logically, were not allowed to base that claim upon conjectural evidence. But in the case at bar we have a defendant who is being prosecuted and who has no burden whatsoever to prove anything. The very nature of the defense in a criminal case is to raise a reasonable doubt concerning the state's evidence. The question presented is not whether the defendant did not commit the crime charged but whether he did beyond reasonable doubt.

In discussing the use of the hypothetical question, Professor Charles T. McCormick [2] points out that courts should not be unduly restrictive in the formulation of the hypothetical:

"Direct testimony supporting the fact assumed is not required. It is sufficient if it is fairly inferable from circumstances proved. Moreover, the supporting evidence need not have been already adduced if the interrogating counsel gives assurance that it will be. And of course, it is no objection that the supporting evidence is controverted. The proponent is entitled to put his side of the case to the witness for his opinion.

"In doing this, however, there is danger that by omitting some of the facts, he may present an unfair and inadequate picture to the expert, and that the jury may give undue weight to the answer, without considering its faulty basis. What safeguards should be supplied? Some courts have required that all facts material to the question should be embraced in the hypothesis, but this seems

[2] McCormick, *Evidence* (1954, hornbook series), ch. 3, pp. 31, 32, sec. 14.

undesirable as likely to multiply disputes as to the sufficiency of the hypothesis, and as tending to cause counsel, out of abundance of caution, to propound questions so lengthy as to be wearisome and almost meaningless to the jury. The more expedient and more widely prevailing view is that there is no rule requiring that all material facts be included. The safeguards are that the adversary may on cross-examination supply omitted facts and ask the expert if his opinion would be modified by them, and further that the trial judge if he deems the original question unfair may in his discretion require that the hypothesis be reframed to supply an adequate basis for a helpful answer."

The problems attendant upon requiring all facts to be included in the hypothesis can be no better exemplified than in the instant case. Professor McCormick's observations are entirely apropos. The only objection to the hypothesis was that the force of the blows received by the victim could not be sufficiently described to erase all conjecture from an opinion of the testifying doctors. It seems, however, the description of the blows was sufficient to support an inference for the doctor to formulate some type of an opinion as to whether the deceased suffered head injuries that could cause death. That the opinion might be based on conflicting inference, or that the hypothesis may omit additional material facts, are matters which can be elicited on cross-examination or redirect examination as the case may be. It is then for the jury to decide what weight will be accorded the expert's opinion.

This is demonstrated by *Rausch v. Buisse* (1966), 33 Wis. 2d 154, 169, 146 N. W. 2d 801:

"In other words, a party has a right to an opinion of an expert witness on the facts which that party claims to be the facts of the case. This rule is subject to the limitation that questions which *unfairly* select part of the established facts or which omit material parts should be rejected. *However, the normal rule is that any disadvantage to the defendant by the hypothetical question*

*should be remedied on cross-examination."* (Emphasis supplied.)

The state submits *Kreyer v. Farmers' Co-operative Lumber Co.* (1962), 18 Wis. 2d 67, 117 N. W. 2d 646, as authority for the rule that where the hypothetical question is devoid of any assumption of evidence as to the cause of the event in question, an objection to the question should be sustained because it would call for an answer giving an opinion or conclusion based purely on speculation and conjecture. We adhere to the rule set forth in *Kreyer* but conclude it does not apply here for the reason that evidence did establish that a fatal cardiovascular collapse could be the result of a brain injury and that evidence of violence and blows to the head of the deceased was sufficient to allow the expert to express his opinion if he had one. The force of the blows and all other relevant and material evidence which could affect the opinion and ultimate finding were proper subjects of cross-examination, redirect examination, and rebuttal. It is our opinion that it was error to sustain the objections to the hypothetical questions.

Defendant also objects to a remark made by the trial judge in the presence of the jury. In sustaining the objection to the long hypothetical question asked Dr. Saculla, the judge commented:

"Doctor Saculla has now testified that there may be any number of causes for vascular deterioration or whatever term was used, as to cause a body to die. He died, but how can, based upon the record here of Mr. Woods, Mr. Heggie, Mr. Risner, Mrs. Rice, can there be a possible basis of an intelligent question on which you are going to ask the jury to consider when we do not have actually the manner of force. You have, at the most, the one man Heggie, had Mr. Nichols with his hands in the air."

The rules relating to the trial court's comments and remarks when making rulings are summarized in 53 Am. Jur., *Trial,* pp. 77, 78, sec. 79:

"While the rule forbidding a judge during the course of a trial to comment upon the evidence has been held applicable to comment made as an incident to a ruling, a remark of a trial judge which is necessarily made in ruling upon an objection, such as an objection to the admission of evidence, does not constitute ground for reversal. Judges are not prohibited . . . from stating to counsel the reasons for rulings during the progress of a trial, the facts upon which their conclusions are based, or the purpose of questions propounded; from alluding to or stating the evidence in the record; or from stating that there is no evidence as to a matter, provided the statement is true."

The judge's comment in this instance was consistent with his opinion that the hypothetical question was insufficient to be the basis of an expert's opinion as to the cause of death. Because we have concluded it was error to sustain the objections to the hypothetical questions it follows that the comment was improper.

The state contends that errors in limiting the examination of medical witnesses and the comment of the judge were not prejudicial and cannot be the basis for a new trial. We agree.

Sec. 274.37, Stats., provides:

"**Judgments; application to reverse or set aside; new trial; reversible errors.** No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

In *Oseman v. State* (1966), 32 Wis. 2d 523, 530, 145 N. W. 2d 766, we stated:

"Thus it becomes evident that a verdict is upset only when, in the discretion of the court, the court believes that in view of the proceedings as a whole, substantial rights

of the complaining party have been affected. It is our belief that the substantial rights of the plaintiff in error were not affected and that no reasonable jury could have fairly come to any other decision.

"For sec. 274.37, Stats., to intervene and save the verdict, there should be an overwhelming quantity of other evidence in the case. *Bartz v. State* (1938), 229 Wis. 522, 282 N. W. 562."

The state correctly points out that prior injury and even one which will or might lead to death does not affect the liability for homicide of an accused whose act contributed to or accelerated the death:

"Similarly, accused is liable if deceased was suffering from a prior injury and the act of accused contributed to or accelerated his death, as where accused inflicted additional wounds which hastened the death of one already mortally wounded. Responsibility attaches for an injury which accelerated death although the condition from which the victim was suffering would itself probably have caused death, or might have done so." 40 C. J. S., *Homicide,* p. 856, sec. 11.

We have reviewed the entire record with great care. From the proceedings as a whole we conclude that it is impossible to believe Nichols came to his death by means other than the shotgun blast to his face at the hands of the defendant. Any errors in trial did not affect the substantial rights of the defendant. While the evidence conceivably would have permitted the jury to return a verdict of second-degree murder or even manslaughter, this evidence did not go to the cause of Nichols' death. The defendant does not contend, nor could he successfully do so, that the evidence in the record is insufficient to support a verdict of first-degree murder.

There is no positive evidence that Nichols was unconscious at the time he was shot. On the contrary, two of the three witnesses who saw the affair outside the tavern door, both of whom were witnesses for the defendant, testified to the contrary. The witness Gibson

testified that Nichols was lying on his back with his arms in the air and hands on the gun barrel struggling with the gun. The defendant himself testified that Nichols had his hands on the gun barrel and was struggling when the gun was discharged. This uncontradicted testimony is entirely inconsistent with any theory that Nichols was already dead, that he was dying, or that he was unconscious. It is a matter of common knowledge that a blast from a 12-gauge shotgun at close range is usually devastating and lethal. We are convinced, as was the jury and the trial court, that Nichols died as a result of the shotgun blast at the hand of the defendant. The errors in the trial were not prejudicial and did not affect a substantial right of the defendant.

*By the Court.*—Judgment and order affirmed.