BETEHIA, Appellant, v. CAPE COD CORPORATION,
Respondent.

*April 6—May 3, 1960.*

324

For the appellant there was a brief by *Lewis I. Cohen* and *Kersten & McKinnon,* attorneys, and *E. Campion Kersten* of counsel, all of Milwaukee, and oral argument by *E. Campion Kersten.*

For the respondent there was a brief by *Paulsen, Wake & Prosser,* attorneys, and *John F. Zimmermann* of counsel, all of Milwaukee, and oral argument by *Mr. Zimmermann.*

HALLOWS, J. This is a case of first impression. No Wisconsin cases are cited by either the plaintiff or the defendant and we have not found any on the precise point involved. The controlling questions are whether the presence in the sandwich of the chicken bone of the size described in the complaint, which is natural to the meat contained in the sandwich, constituted a breach of an implied warranty by the restaurateur that the chicken sandwich was reasonably fit for human consumption; and whether the defendant restaurant operator was negligent in preparing and serving such a sandwich in his public restaurant to the plaintiff patron. The trial court did not discuss the question of negligence in its opinion, but it is clear the court considered both causes of action were controlled by the same principles of law and held that no cause of action on either theory was stated under the line of authorities represented by *Mix v. Ingersoll Candy Co.* (1936), 6 Cal. (2d) 674, 59 Pac. (2d) 144.

It is not disputed or questioned by the parties or by the trial court that the transaction between the plaintiff and the defendant amounted to a sale so that an implied warranty either under common-law principles or sec. 121.15, Stats.,

19 W. S. A., p. 49 (Sales Act), would be applicable. We deem it necessary to pass on this point because the question has not been decided and was expressly left open for decision in *Prinsen v. Russos* (1927), 194 Wis. 142, 215 N. W. 905, and in *Doherty v. S. S. Kresge Co.* (1938), 227 Wis. 661, 278 N. W. 437.

Authorities split over whether a restaurant operator sells the food he serves, or whether he renders a service to his patrons. The minority Connecticut-New Jersey rule views such a fact situation as not being a sale of food by a restaurateur and therefore no implied warranty exists. The only liability of an operator of a restaurant to his patron is for common-law negligence. *Merrill v. Hodson* (1914), 88 Conn. 314, 91 Atl. 533, and *Nisky v. Childs Co.* (1927), 103 N. J. L. 464, 135 Atl. 805, are the leading cases for this view. This line of authority bases its decisions on the reasoning an innkeeper utters, rather than sells, the food, because food was generally combined with other services in the old, typical English inn, or the food was incidental to the service of preparing and serving it or title could not pass because the food was consumed in the process of delivery. These are old-fashioned concepts which do not fit modern-day practices. Food or meals may be sold in a restaurant or hotel not combined with any services such as lodging. The food furnished in a restaurant is paramount and the preparation and serving of it are incidental to the sale. Title under the sale theory passes when the food is put on the table, not piecemeal as it is consumed. The old boardinghouse theory under which one could carry away as much of the food furnished as he could stuff in his stomach but could not put any in his pocket has no application to modern dining. Today if one takes home from a restaurant part of his steak for his dog, he could hardly be accused of larceny.

The more-recent cases now constituting the majority rule hold that one engaged in the business of serving food for

immediate consumption on the premises sells the meal or food served, impliedly warrants it is reasonably fit for human consumption, and is liable upon breach of such warranty. The sales theory applies whether one is eating a la carte, table d'hote, in a restaurant or in a cafeteria, automat or drive-in, and whether the food is eaten on or off the premises. This view is known as the Massachusetts-New York rule. *Friend v. Childs Dining Hall Co.* (1918), 231 Mass. 65, 120 N. E. 407; *Temple v. Keeler* (1924), 238 N. Y. 344, 144 N. E. 635. For a discussion of these two theories and the jurisdictions so holding, see Annos. 35 A. L. R. 921, 7 A. L. R. (2d) 1027.

We adopt the better-reasoned majority rule and hold that when a patron orders, and pays for, a meal or food at a public restaurant, there is a sale of such food within the meaning of sec. 121.15, Stats., and there exists an implied warranty that the food so sold is reasonably fit for human consumption. We deem that a patron of a restaurant ordering a meal or food thereby makes known to the seller the particular purpose for which the food is required and by that act relies on the seller's skill and judgment in preparing such food.

Is the implied warranty of reasonable fitness of food for human consumption breached because of the presence of a chicken bone in a chicken sandwich? The *Mix Case, supra,* which represents one view held that as a matter of law a harmful substance present in food which is natural to it cannot be a legal defect or a breach of the implied warranty of reasonable fitness of such food. That case was brought both on the theory of implied warranty and of common-law negligence. The plaintiff was injured by a chicken bone in chicken potpie. On demurrer the court held the defendant was not liable under either theory because chicken bones were natural to the meat served and not a foreign substance, and

it was common knowledge chicken pies occasionally contain chicken bones, and therefore their presence ought to be anticipated and guarded against by the consumer.

This reasoning is fallacious because it assumes that all substances which are natural to the food in one stage or another of preparation are, in fact, anticipated by the average consumer in the final product served. It does not logically follow that every product which contains some chicken must as a matter of law be expected to contain, occasionally or frequently, chicken bones or chicken-bone slivers because chicken bones are natural to chicken meat and both have a common origin. Categorizing a substance as foreign or natural may have some importance in determining the degree of negligence of the processor of food, but it is not determinative of what is unfit or harmful in fact for human consumption. A bone natural to the meat can cause as much harm as a foreign substance such as a pebble, piece of wire, or glass. All are indigestible and likely to cause injury. Naturalness of the substance to any ingredients in the food served is important only in determining whether the consumer may reasonably expect to find such substance in the particular type of dish or style of food served.

However, the reasoning of the *Mix Case* has been followed by four intermediate appellate courts: *Silva v. F. W. Woolworth Co.* (1938), 28 Cal. App. (2d) 649, 83 Pac. (2d) 76 (implied warranty and negligence alleged), a turkey bone imbedded in the dressing of a special plate of roast turkey; *Lamb v. Hill* (1952), 112 Cal. App. (2d) 41, 245 Pac. (2d) 316 (negligence alleged), a fragment of chicken bone in chicken pie; *Goodwin v. Country Club of Peoria* (1944), 323 Ill. App. 1, 54 N. E. (2d) 612 (implied warranty and negligence), a bone in creamed chicken made from turkey meat (query: Whether a turkey bone is natural to creamed chicken); *Norris v. Pig'n Whistle Sandwich Shop, Inc.* (1949), 79 Ga. App. 369, 53 S. E. (2d) 718 (negligence),

a particle of bone in a barbecued-pork sandwich; and *Davison-Paxon Co. v. Archer* (1954), 91 Ga. App. 131, 85 S. E. (2d) 182 (negligence), turkey bone in creamed turkey.

The naturalness doctrine was applied in *Brown v. Nebiker* (1941), 229 Iowa 1223, 296 N. W. 366 (implied warranty and negligence), a sliver of a bone in a pork chop swallowed by the deceased; in *Adams v. Great Atlantic & Pacific Tea Co.* (1960), 251 N. C. 565, 112 S. E. (2d) 92 (implied warranty), a partially crystalized grain of corn in corn flakes; and in *Shapiro v. Hotel Statler Corp.* (D. C. Cal. 1955), 132 Fed. Supp. 891 (implied warranty), a fishbone in Hot Barquette of Seafood Mornay, made of several kinds of fish. The rule was recognized but held not applicable in *Arnaud's Restaurant, Inc., v. Cotter* (5th Cir. 1954), 212 Fed. (2d) 883 (negligence and implied warranty), crab shell in fish dish. In *Allen v. Grafton* (Ohio 1960), 164 N. E. (2d) 167 (warranty), by a divided court the plaintiff did not recover for injury sustained while eating fried oysters in which a piece of oyster shell about one and one-fifth inches by four fifths of an inch was present. But the court expressly did not hold that because an oyster shell was natural and not foreign to an oyster, there was no liability, but grounded its decision on the reasonable expectation of one who eats oysters to find a piece of shell as a matter of law, especially where it is as big a piece as alleged.

Dickerson in his book entitled "Products Liability and the Food Consumer," p. 185, sec. 4.3, criticizes the test of naturalness and argues that the better rule is the test of reasonable expectation. The instant case poses the crucial question of an alleged defect which is natural but generally unanticipated, at least no court has decided the question pertaining to a chicken bone in a chicken sandwich.

The test of reasonable expectation has been followed in other types of food. In *Wood v. Waldorf System* (1951), 79 R. I. 1, 83 Atl. (2d) 90 (negligence), the plaintiff swallowed

a chicken bone while eating chicken soup which contained chicken meat and vegetables. Recovery was allowed on the theory that while a chicken bone was natural to chicken, it was not necessary, natural, or customary for bones to be allowed to remain concealed in this type of soup. The question was whether the presence of the bone in the soup was to be expected by the consumer. See *Paolinelli v. Dainty Foods Mfg., Inc.* (1944), 322 Ill. App. 586, 54 N. E. (2d) 759 (negligence), bone in noodle-soup mix. Likewise, in *Bonenberger v. Pittsburgh Mercantile Co.* (1942), 345 Pa. 559, 28 Atl. (2d) 913 (warranty case), where the plaintiff was injured swallowing a sharp oyster shell about the size of a 25-cent piece while eating oyster stew made from a can of oysters, the court held it was for the jury to pass on the evidence, and it could not hold as a matter of law that the oysters as furnished were reasonably fit for human consumption. For criticism of this case, see 17 Temple University Law Quarterly, p. 204, which advocates the naturalness theory. See also *Roseberry v. Wachter* (1925), 33 Del. (3 W. W. Harr.) 253, 138 Atl. 273 (negligence), in which the plaintiff swallowed a splinter of chicken bone while eating chicken-noodle soup. The decision concerns itself with the instruction to the jury.

In *Bryer v. Rath Packing Co.* (1959), 221 Md. 105, 156 Atl. (2d) 442 (negligence), a child's throat was injured by a small chicken bone while she was eating chow mein in a school cafeteria which purchased the chow mein in sealed cans which were advertised as "Ready to Serve Boned Chicken." While stressing the advertising on the container as boned chicken, the court after reviewing authorities decided that the fact situation was more nearly akin to the reasonable-expectation cases than to the naturalness cases and involved the question of whether due care was exercised by the defendant and what the plaintiff had a right to reasonably expect under the circumstances. *Gimenez v. Great*

*Atlantic & Pacific Tea Co.* (1934), 264 N. Y. 390, 191 N. E. 27 (implied warranty), held the plaintiff could recover for eating canned crab meat containing small crystals. It is not clear from the opinion whether the crab meat contained struvite, a natural salt crystal formed after canning from the juices of the meat. The court merely stated that the substance was deleterious. However, in *O'Hare v. Petersen* (1940), 174 Misc. 481, 21 N. Y. Supp. (2d) 487, involving struvite in shrimp, after discussing the *Gimenez Case*, it was held that even though the elements were natural to the meat, they were harmful and rendered the food unfit for consumption. See also *Lore v. De Simone Bros.* (1958), 12 Misc. (2d) 174, 172 N. Y. Supp. (2d) 829 (implied warranty), recovery allowed for fragment of bone in a piece of salami; bone not natural to the product as distinguished from the meat in the product.

It is argued the soup cases are distinguishable from a sandwich case because soup can be strained. Such a distinction goes to the defendant's negligence, not to what a consumer reasonably expects. It is also argued the soup cases are not applicable because soup does not require mastication, and the consumer is less likely and able to guard against a bone in liquid or in soft food than in food which he must chew. This argument is pertinent to the plaintiff's contributory negligence in the cause of action based on negligence, not to the defendant's duty of ordinary care.

The "foreign-natural" test applied as a matter of law does not recommend itself to us as being logical or desirable. It is true one can expect a T-bone in T-bone steak, chicken bones in roast chicken, pork bone in a pork chop, pork bone in spareribs, a rib bone in short ribs of beef, and fishbones in a whole baked or fried fish, but the expectation is based not on the naturalness of the particular bone to the meat, fowl, or fish, but on the type of dish served containing the meat, fowl, or fish. There is a distinction between what a

consumer expects to find in a fish stick and in a baked or fried fish, or in a chicken sandwich made from sliced white meat and in roast chicken. The test should be what is reasonably expected by the consumer in the food as served, not what might be natural to the ingredients of that food prior to preparation. What is to be reasonably expected by the consumer is a jury question in most cases; at least, we cannot say as a matter of law that a patron of a restaurant must expect a bone in a chicken sandwich either because chicken bones are occasionally found there or are natural to chicken.

This test as applied to an action for breach of the implied warranty is keyed to what is "reasonably" fit. If it is found that the chicken bone the size alleged ought to be anticipated in a chicken sandwich and guarded against by the consumer plaintiff, then the sandwich was reasonably fit under the implied warranty. As applied to the action for common-law negligence, the test is related to the foreseeability of harm on the part of the defendant. He is not an insurer but has the duty of ordinary care to eliminate or remove, in the preparation of the food he serves, such harmful bones as the consumer of the food, as served, would not ordinarily anticipate and guard against.

One of the acts of negligence alleged in the complaint is that the serving of the sandwich by the defendant violated the provisions of sec. 97.25 (2) (h), Stats., providing that food is adulterated if it bears or contains any added substance or ingredients which are poisonous, injurious, or deleterious to health. This point was not briefed by the parties. The plaintiff in his brief states the sole question on the negligence issue is whether the defendant had a duty of due care based on foreseeable danger to make sure there were no bones in the sandwich served to the plaintiff. We therefore do not decide the applicability of sec. 97.25 (2) (h). The other specific acts of negligence alleged are sufficient to state a cause of action against a demurrer.

The demurrer should have been overruled because it states a cause of action both for breach of an implied warranty and for negligence.

*By the Court.*—Judgment reversed.