ELSIE M. JACKSON, Plaintiff-Appellant, v. NESTLE-BEICH, INC., Defendant- Appellee.

Fifth District    No. 5—89—0578

Opinion filed March 28, 1991.

William A. Mudge, of Lucco & Brown, of Edwardsville, for appellant.

Marc A. Lapp, of Burroughs, Simpson, Hepler, Broom & MacDonald, of Edwardsville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

On approximately May 26, 1988, plaintiff bought a sealed can of "Katydids" from defendant. Katydids are a chocolate-covered pecan-caramel candy. Plaintiff bit into one of the candies and allegedly broke a tooth on a hard pecan shell that was embedded in it. Plaintiff filed a two-count complaint; count I was based on a breach of warranty theory and count II was based on products liability.

After limited discovery defendant filed a motion for summary judgment arguing that if the harmful substance in a product is one that is natural to the food, its presence does not support a claim on either a breach of warranty or strict liability basis. The trial court allowed defendant's motion in an order which stated in part:

> "Plaintiff's theories are breach of warranty and that the product was unwholesome and unreasonably dangerous for inclusion of a pecan shell in a candy containing pecans. The Court believes that the law of the State of Illinois is such that a food product is not rendered unwholesome by reason of inclusion therein of a substance natural to an ingredient thereof. The Court might personally wish the rule to be different but finds the law to be as set forth above and such to be the law even after the *Suvada* case relied upon by the Plaintiff."

Plaintiff filed a timely appeal which challenges the continued viability of the foreign-natural doctrine in Illinois. We reverse.

■ The foreign-natural doctrine was apparently first announced some 55 years ago in the California case of *Mix v. Ingersoll Candy Co.* (1936), 6 Cal. 2d 674, 59 P.2d 144, which involved an injury claimed as a result of the plaintiff's swallowing a sharp fragment of chicken bone in a chicken pie. The trial court's dismissal of plaintiff's complaint was affirmed on appeal:

> "Bones which are natural to the type of meat served cannot legitimately be called a foreign substance, and a consumer who eats meat dishes ought to anticipate and be on his guard against the presence of such bones. At least he cannot hold the

restaurant keeper whose representation implied by law is that the meat dish is reasonably fit for human consumption, liable for any injury occurring as a result of the presence of a chicken bone in such chicken pie. In the case of *Goetten v. Owl Drug Co.* [1936], *** [59 P.2d 142], this day decided, we held that the application of the rule of implied warranty might impose a heavy burden upon the keeper of restaurants and lunch counters, but that considerations of public policy and public health and safety are of such importance as to demand that such obligation be imposed. This is true, but we do not believe that the onerous rule should be carried to absurd limits. Certainly no liability would attach to a restaurant keeper for the serving of a T-bone steak, or a beef stew, which contained a bone natural to the type of meat served, or if a fish dish should contain a fish bone, or if a cherry pie should contain a cherry stone—although it be admitted that an ideal cherry pie would be stoneless. The case of a chicken bone in a chicken pie is, in our opinion, analogous to the cited examples, and the facts set forth in the first count of the complaint do not state a cause of action." *Mix v. Ingersoll Candy Co.* (1936), 6 Cal. 2d 674, 682, 59 P.2d 144, 148.

For some period of time the California courts followed *Mix* without question. (See *Silva v. F.W. Woolworth Co.* (1938), 28 Cal. App. 2d 649, 83 P.2d 76 (plaintiff denied recovery for turkey bone lodged in her throat when she ate a plate of roast turkey, vegetables and dressing, even though the bone was concealed in the dressing); *Lamb v. Hill* (1952), 112 Cal. App. 2d 41, 245 P.2d 316 (plaintiff denied recovery when injured by a fish bone in a dish of seafood mornay).) More recently the appellate courts of California seem to have split in their willingness to accept the *Mix* rationale. *Evert v. Suli* (1989), 211 Cal. App. 3d 605, 259 Cal. Rptr. 535, involved a plaintiff who broke a tooth when she bit into a piece of bone in a hamburger. *Evert* interpreted *Mix* as applying only in situations in which it is a matter of common knowledge that the food in question occasionally contains the injury-causing substance and also noted that the food in *Mix* had not been put through a meat grinder. A different division of the California appellate court reached the opposite conclusion in *Mexicali Rose v. Superior Court* (1989), 232 Cal. App. 3d 1223, 262 Cal. Rptr. 750, *cert. granted* (1989), 264 Cal. Rptr. 683, 782 P.2d 1139, which involved a plaintiff who had a chicken bone lodge in his throat while consuming a chicken enchilada. Two members of the panel in *Mexicali Rose* held:

"Compelled by stare decisis, we agree with petitioners that their demurrer should have been sustained." (232 Cal. App. 3d at 1225, 262 Cal. Rptr. at 751.)

Judge Poche concurred, but wrote separately because of his concern "with the present state of the chicken bone law."

"The problem is that *Mix* is wrongly decided in light of the modern law of products liability. That case is ripe for reconsideration by our Supreme Court. Until and unless that occurs I will explain to my luncheon companions why for sound legal reasons they should order a hamburger and pass up the chicken enchiladas." *Mexicali Rose*, 232 Cal. App. 3d at 1229-30, 262 Cal. Rptr. at 753-54 (Poche, J., concurring).

After this brief review of California's continuing problems with the foreign-natural doctrine, and in direct violation of Horace Greeley's admonition, we will now move east to examine Illinois' treatment of it. The only Illinois case to discuss the foreign-natural doctrine is *Goodwin v. Country Club* (1944), 323 Ill. App. 1, 54 N.E.2d 612, which involved the death of a woman who choked on a bone in a creamed chicken dish. *Goodwin* referred to what it considered to be the only four cases on the subject in the country at the time. Three of those cases held there was no liability for a natural object in food: *Mix* (chicken bone in chicken pie); *Silva v. F.W. Woolworth Co.* (1938), 28 Cal. App. 2d 649, 83 P.2d 76 (turkey bone in dressing); and *Brown v. Nebiker* (1941), 229 Iowa 1223, 296 N.W. 366 (bone in pork chop). The only other case, *Bonenberger v. Pittsburgh Mercantile Co.* (1942), 345 Pa. 559, 28 A.2d 913, reversed a directed verdict for the defendant for injuries sustained as a result of ingesting a piece of oyster shell. *Goodwin* found *Bonenberger* unpersuasive and instead adopted the rationale of *Mix*:

"The instant case presents a situation involving the question of implied warranty of reasonable fitness of food for human consumption and whether such warranty is breached by the presence therein of a substance natural to the food being served, and not removed therefrom in the process of its preparation for consumption. *** Modern conditions require that establishments serving food shall be operated in a sanitary way and furnish food that is wholesome and fit to be eaten. However, such rule should be construed and applied in a reasonable manner, taking into consideration the common experience of life. When viewed in this light, it must be conceded that practically all meat dishes, whether they consist of beef, pork, fish or foul, do

contain bones peculiar to the food being served." *Goodwin*, 323 Ill. App. at 8, 54 N.E.2d at 615.

The only other Illinois case that is similar to *Goodwin* was actually decided the day before *Goodwin*. *Paolinelli v. Dainty Foods Manufacturers, Inc.* (1944), 322 Ill. App. 586, 54 N.E.2d 759, involved the death of a child which resulted from the ingestion of a chicken bone. The foreign-natural doctrine was not actually discussed in *Paolinelli* since the court was primarily concerned with evidence as to the source of the chicken bone and other issues. The court resolved these issues in the plaintiff's favor, affirmed the award, and noted, albeit in passing, that:

> "If the bone did not come from the jar of noodle soup mix, defendant cannot be held responsible. If the bone did come from the jar of noodle soup mix, the verdict of the jury should stand. If the bone came from the jar, that would be strong evidence that there was an omission on the part of defendant's servants to observe some of the precautions about which they testified as to the preparation and filling of the jars." *Paolinelli*, 322 Ill. App. at 597, 54 N.E.2d at 764.

The fact that there have been only three cases in Illinois in the last 50 years that were concerned with injuries caused by natural ingredients in food products suggests that the defendant may be overly concerned about the flood of litigation that refusing to recognize the foreign-natural doctrine might unleash. An examination of cases in other States reveals two things: (1) there has not been an overwhelming number of this type of case; and (2) the cases are presently about equally divided on the foreign-natural question with a possible slight trend toward its rejection. An nonexhaustive listing of cases follows:

*Cases Continuing To Apply The Foreign-Natural Doctrine*

California

> *Mix, Silva, Evert, Mexicali,* and *Lamb v. Hill* (1952), 112 Cal. App. 2d 41, 245 P.2d 316 (bone in chicken pie).

Georgia

> *Norris v. Pig'n Whistle Sandwich Shop, Inc.* (1949), 79 Ga. App. 369, 53 S.E.2d 718 (piece of bone in barbeque pork sandwich).

Iowa

> *Brown v. Nebiker* (1941), 229 Iowa 1223, 296 N.W. 366 (bone in pork chop).

Louisiana

Musso v. Picadilly Cafeterias, Inc. (La. Ct. App. 1965), 178 So. 2d 421 (cherry pit in a slice of cherry pie). Musso apparently presents a hybrid situation; defendants are not responsible on a breach of implied warranty of wholesomeness for natural contaminants, but they may be liable if the natural contaminants are left in the finished product as a result of negligence. See also Title v. Pontchartrain Hotel (La. Ct. App. 1984), 449 So. 2d 677 (pearl in fried oyster); Riviere v. J.C. Penney Co. (La. Ct. App. 1985), 478 So. 2d 965 (plaintiff broke tooth on a hamburger club sandwich but was unable to present any evidence of a deleterious substance).

Massachusetts

Webster v. Blue Ship Tea Room, Inc. (1964), 347 Mass. 421, 198 N.E.2d 309 (fish bone in fish chowder). But see Phillips v. Town of West Springfield (1989), 405 Mass. 411, 540 N.E.2d 1331 (bone in cubed turkey).

North Carolina

Adams v. Great Atlantic & Pacific Tea Co. (1960), 251 N.C. 565, 112 S.E.2d 92 (partially crystallized grain of corn in package of corn flakes); Coffer v. Standard Brands, Inc. (1976), 30 N.C. App. 134, 226 S.E.2d 534 (unshelled filbert in jar of dry roasted mixed nuts).

New York

Courter v. Dilbert Bros., Inc. (1959), 19 Misc. 2d 935, 186 N.Y.2d 334 (piece of prune pit in jar of prune butter). But see Stark v. Chock Full O'Nuts (1974), 77 Misc. 2d 553, 356 N.Y.2d 403 (walnut shell in a nutted cheese sandwich).

Ohio

Allen v. Grafton (1960), 170 Ohio St. 249, 164 N.E.2d 167 (oyster shell in fried oysters).

Cases Not Adopting Foreign-Natural Doctrine

Alabama

Ex parte Morrison's Cafeteria of Montgomery, Inc. (Ala. 1983), 431 So. 2d 975 (fish bone in fish filet). While Morrison approved the reasonable expectation test over the foreign-natural doctrine, it also held, as a matter of law, that a one-centimeter bone in a fish filet did not render the filet either unfit for human consumption or unreasonably dangerous. Plaintiff was a three-year-old child.

District of Columbia
> *Hochberg v. O'Donnell's Restaurant, Inc.* (D.C. 1971), 272 A.2d 846 (olive pit inside olive in a martini).

Florida
> *Koperwas v. Publix Supermarkets, Inc.* (Fla. App. 1988), 534 So. 2d 872 (recognized the reasonable expectation test, but affirmed a directed verdict for the defendant on a piece of clam shell in a bowl of clam chowder because such a presence is so widely known); *Zabner v. Howard Johnsons, Inc.* (Fla. App. 1967), 201 So. 2d 824 (walnut shell in maple walnut ice cream).

Kansas
> *Johnson v. C.F.M., Inc.* (D. Kan. 1989), 726 F. Supp. 1228 (coffee grounds in cup of coffee).

Maryland
> *Bryer v. Rath Packing Co.* (1959), 221 Md. 105, 156 A.2d 442 (chicken bone in chicken chow mein dinner); *Yong Cha Hong v. Marriott Corp.* (D. Md. 1987), 656 F. Supp. 445 (chicken trachea or aorta in a fried chicken wing).

Massachusetts
> *Phillips v. Town of West Springfield* (1989), 405 Mass. 411, 540 N.E.2d 1331 (bone in cubed turkey). But see *Webster v. Blue Ship Tea Room, Inc.* (1964), 347 Mass. 421, 198 N.E.2d 309 (fish bone in fish chowder).

New York
> *Stark v. Chock Full O'Nuts* (1974), 77 Misc. 2d 553, 138 N.Y. Supp. 128 (walnut shell in nutted cheese sandwich). But see *Courter v. Dilbert Bros. Inc.* (1958), 19 Misc. 2d 935, 186 N.Y. Supp. 2d 334 (piece of prune pit in prune butter).

Oklahoma
> *Williams v. Braum Ice Cream Stores, Inc.* (Okla. Ct. App. 1974), 534 P.2d 700 (cherry pit in cherry ice cream); *O'Dell v. DeJean's Packing Co.* (Okla. Ct. App. 1978), 585 P.2d 399 (pearl in canned oysters).

Pennsylvania
> *Bonenberger v. Pittsburgh Mercantile Co.* (1942), 345 Pa. 559, 28 A.2d 913 (oyster shell in canned oysters).

Rhode Island
> *Wood v. Waldorf System, Inc.* (1951), 79 R.I. 1, 83 A.2d 90 (chicken bone in chicken soup).

Texas
> *Matthews v. Campbell Soup Co.* (S.D. Tex. 1974), 380 F. Supp. 1061, (pearl in can of oyster stew); *Jim Dandy Fast Foods,*

*Inc. v. Carpenter* (Tex. Ct. App. 1976), 535 S.W.2d 786 (chicken bone in a chicken breast that was cut differently).

Washington

*Jeffries v. Clark's Restaurant Enterprises, Inc.* (1978), 20 Wash. App. 428, 580 P.2d 1103 (crab shell in "crab melt" sandwich).

Wisconsin

*Betehia v. Cape Cod Corp.* (1960), 10 Wis. 2d 323, 103 N.W.2d 64 (chicken bone in chicken sandwich).

The position of those courts which adhere to the foreign-natural doctrine was set forth in the earlier quote from *Mix*. The position of the courts which reject the doctrine is stated in *Betehia v. Cape Cod Corp.*:

"The 'foreign-natural' test applied as a matter of law does not recommend itself to us as being logical or desirable. It is true one can expect a T-bone in T-bone steak, chicken bones in roast chicken, pork bone in a pork chop, pork bone in spare ribs, a rib bone in short ribs of beef, and fishbones in a whole baked or fried fish, but the expectation is based not on the naturalness of the particular bone to the meat, fowl, or fish, but on the type of dish served containing the meat, fowl, or fish. There is a distinction between what a consumer expects to find in a fish stick and in a baked or fried fish, or in a chicken sandwich made from sliced white meat and in roast chicken. The test should be what is reasonably expected by the consumer in the food as served, not what might be natural to the ingredients of that food prior to preparation. What is to be reasonably expected is a jury question in most cases; at least, we cannot say as a matter of law that a patron of a restaurant must expect a bone in a chicken sandwich either because chicken bones are occasionally found there or are natural to chicken." (*Betehia*, 10 Wis. 2d 323, 331-32, 103 N.W.2d 64, 68-69.)

The *Betehia* comments are amplified in *O'Dell v. DeJean's Packing Co.* (Okla. Ct. App. 1978), 585 P.2d 399:

"Oftentimes, extensive damage and even death is caused by a substance in the prepared food that is 'natural' to the food item in its *original state*. Thus, there seems little logic in the 'foreign-natural' test. It appears the weakness in this test leads to ridiculous results. Where is the line drawn? For example, chicken bones are natural to chicken, but so are beaks, claws, and intestines. One therefore wonders what the courts in the jurisdictions following the 'foreign-natural' test would decide in

the chicken soup case if it were a chicken beak or claw that caused the damage rather than a chicken bone, because all three parts are 'natural' to the chicken. ***

If one purchases a whole fish to bake surely he or she could 'reasonably expect' to find bones in it. However, if one purchases fish patties or fish sticks, it seems unrealistic to say he would 'reasonably expect' to find bones in the processed items. Likewise, if one purchases oysters in the shell it might be said one could 'reasonably expect' to find a pearl in one of the oysters. However, if one purchases canned processed oysters it seems unrealistic to say he could 'reasonably expect' to find a pearl in same. Herein lies the difficulty or confusion in food cases. The *possibility* of finding a harmful substance versus the *probability* of finding a harmful substance seems the key in analyzing these cases. ***

If one 'reasonably expects' to find an item in his or her food then he guards against being injured by watching for that item. When one eats a hamburger he does not nibble his way along hunting for bones because he is not 'reasonably expecting' one in the food. Likewise, when one eats processed oysters, normally one does not gingerly graze through each oyster hunting for a pearl because he is not 'reasonably expecting' one in the food. It seems logical some consideration should be given to the manner in which the food is normally eaten in determining if a person can be said to 'reasonably expect' an item in processed food. In the present case we think the average, ordinary, reasonably prudent person eating processed oysters would eat same by way of bites and would not nibble her way through each oyster because of the possibility of finding a pearl." (Emphasis in original.) *O'Dell*, 585 P.2d at 402.

Turning for a moment from the cases to the commentators, we find that they are generally critical of the foreign-natural doctrine. See Schag, *Consumer Expectation—The Test of a Substance Natural to a Food as a Legal Defect*, 15 Food Drug Cosm. L.J. 311 (1960); A. Twerski, *From Risk-Utility to Consumer Expectations: Enhancing the Role of Judicial Screening in Product Liability Litigation*, 11 Hofstra L. Rev. 861, 930-33 (1983). But see Note, *Sales-Foods-Implied Warranties*, 17 Temple L.Q. 203 (1942-43).

In his book on the subject, Professor Dickerson states:

"Insofar as these cases rest on the notion of 'naturalness' in the sense that nothing that is an inherent part of the raw product itself can be a legal defect, they do not hold water. Sand is

foreign to fresh spinach but not a legal defect. Conversely, salt crystals are natural to crab meat, oyster shells are natural to oysters, and yeast fermentation is natural to some soft drinks; and yet, as the next section shows, these substances have been treated as legal defects.

§4.3. The test of reasonable expectation. The better test of what is legally defective appears to be what consumers customarily expect and guard against. Canned foods are expected to be found already washed, cleaned, and trimmed, while the same foods in fresh form normally call for work of that sort by the consumer." (R. Dickerson, Products Liability & the Food Consumer §§4.2, 4.3, at 185 (1951).)

A more pointed criticism is found in a note by Charles Janes entitled *Products Liability—The Test of Consumer Expectation for "Natural" Defects in Food Products*:

"With the prevalence of processed foods on the market today and the development of technology in the food industry, consumers increasingly rely upon food processors to inspect and purify the foods they consume. Many products today are even packaged in such a manner that inspection by the consumer is difficult if not impossible. One might imagine a consumer in a jurisdiction that applies the foreign-natural test tearing away the crust from a beef pot pie to search for tiny bones, or picking apart a cherry-nut ice cream cone to remove stray shells or pits.

In an era of consumerism, the foreign-natural standard is an anachronism. It flatly and unjustifiably protects food processors and sellers from liability even when the technology may be readily available to remove injurious natural objects from foods. The consumer expectation test, on the other hand, imposes no greater burden upon processors or sellers than to guarantee that their food products meet the standards of safety that consumers customarily and reasonably have come to expect from the food industry." 37 Ohio St. L.J. 634, 651-52 (1976).

After reviewing the foregoing we conclude that the foreign-natural doctrine originally set forth in *Mix* and adopted by the second district in *Goodwin* should not be followed. It is not merely a matter of the passage of time and the changing of attitudes that leads us to this conclusion. It appears to us that *Mix* and its progeny (which obviously includes *Goodwin*) have been unsound from the outset.

Taking, as Judge Poche calls them, "the chicken bone" cases as an example, they seem to be based on the following reasoning:

All chickens have bones in them.

All people know that all chickens have bones in them.

Therefore, all people know that all chicken dishes have bones in them.

Without attempting to rearrange these statements into a proper syllogistic form (S. Barker, The Elements of Logic, at 61-81 (1965)), but treating them generally as if they were, it is apparent that both the major and minor premises refer to bones in chicken in its natural state, but the conclusion has the additional element of chicken in a prepared dish. The conclusion, therefore, does not follow from either a logical or a commonsense view of the world.

While we admit that we may have oversimplified and perhaps overstated the position of *Mix* and *Goodwin* in the above example, that is not the only basis of our disagreement with their result. The ultimate conclusion of those cases deals not with knowledge on the part of the consumer, but with the consumer's right to recover. The foreign-natural doctrine holds that because all, or some or many, people know that chicken bones will or may be present in chicken or chicken dishes, no person will be allowed to recover.

In arguing for the adaption of the *Goodwin* position counsel for defendant stated that different results should not be reached based upon whether the injury occurred in Peoria or Edwardsville, Illinois. We agree with that statement in general, but based on the foregoing discussion, we are unable to follow *Goodwin*. Perhaps the supreme court will resolve the split between districts.

■■ ■ We hold that the fact that the allegedly harmful ingredient is natural to the product is not an absolute bar to recovery. The naturalness of the claimed defect is only one of the factors to consider in the determination of whether the defendant has breached a warranty or manufactured an unreasonably dangerous product.

Therefore, the circuit court erred in granting the defendant's motion for summary judgment and we reverse and remand.

Reversed and remanded.

HARRISON and GOLDENHERSH, JJ., concur.