# IN THE SUPREME COURT OF IOWA

No. 60 / 04-1647

Filed September 8, 2006

**DOUGLAS C. KOLARIK**,

      Appellant,

vs.

**CORY INTERNATIONAL CORPORATION, ITALICA IMPORTS,** and **TEE PEE OLIVES, INC.**,

      Appellees.

---

Appeal from the Iowa District Court for Johnson County, William L. Thomas, Judge.

Plaintiff seeking damages for broken tooth appeals from adverse summary judgment in products liability action against importers and wholesalers of pitted olives. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Steven E. Ballard and Patrick J. Ford of Leff Law Firm, L.L.P., Iowa City, for appellant.

David L. Hammer and Angela C. Simon of Hammer, Simon & Jensen, Dubuque, for appellees.

**CARTER, Justice.**

Plaintiff, Douglas C. Kolarik, appeals from an adverse summary judgment in his product-liability action against Cory International Corporation, Italica Imports and Tee Pee Olives, Inc., importers and wholesalers of olives imported from Spain.[1] Plaintiff, relying on theories of negligence, strict liability, and breach of express and implied warranty, sought to recover damages from defendants for the fracturing of a tooth when he bit down on an olive pit or pit fragment.

The district court granted summary judgment for defendants as to each of plaintiff's theories of recovery. After reviewing the record and considering the arguments presented, we affirm the district court's ruling with regard to plaintiff's theories of strict liability, and express and implied warranty, but conclude that, with respect to plaintiff's negligence claim based on an alleged failure to warn, there remains a genuine issue of material fact requiring denial of summary judgment on that theory of recovery.

Plaintiff has alleged that he opened a jar of pimento-stuffed, green olives, which had been imported and sold at wholesale by defendants. He alleges that he used several of these olives, which bore the label Italica Spanish Olives, in the preparation of a salad and, when eating the salad, bit down on an olive pit or pit fragment and fractured a tooth.

The motion papers reveal that defendants are importers and wholesalers of Spanish olives grown by various Spanish companies.[2] They obtain bulk shipments of pimento-stuffed, green olives shipped in 150-

---

[1]Te Pe SA, a Spanish company, was named as an additional defendant in the district court action, but no jurisdiction was obtained over that entity.

[2]The defendants are affiliated companies. Plaintiff has not attempted in the district court or on appeal to identify the role that these entities individually played in placing the olives in the stream of commerce.

kilogram drums to their plant in Norfolk, Virginia. There, the drums are emptied and the olives are washed and placed in a brine solution in glass jars suitable for retail sale under various names including Italica Spanish Olives. When defendants receive the olives, they are inspected for general appearance, pH, and acid level. Defendants rely on their Spanish suppliers for quality control of the pitting and stuffing process. Other facts that are significant in reviewing the summary judgment ruling will be discussed in our consideration of the legal issues presented.

## I.  *Standard of Review.*

Summary judgment rulings are reviewed for correction of errors of law.  *Mason v. Vision Iowa Bd.*, 700 N.W.2d 349, 353 (Iowa 2005). Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Iowa R. Civ. P. 1.981(3).  Further considerations when reviewing a motion for summary judgment are summarized as follows:

> "A factual issue is material only if the dispute is over facts that might affect the outcome of the suit.  The burden is on the party moving for summary judgment to prove the facts are undisputed. In ruling on a summary judgment motion, the court must look at the facts in a light most favorable to the party resisting the motion.  The court must also consider on behalf of the nonmoving party every legitimate inference that can be reasonably deduced from the record."

*Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 677 (Iowa 2004) (quoting *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 717-18 (Iowa 2001)).

## II.  *Strict Liability and Breach of Implied Warranty.*

In sustaining defendants' motion for summary judgment, the district court concluded that defendants were immune from plaintiff's strict-liability claim and implied-warranty-of-merchantability claim by reason of Iowa Code section 613.18(1)(*a*) (2001).  That statute provides:

1. A person who is not the assembler, designer, or manufacturer, and who wholesales, retails, distributes, or otherwise sells a product is:

*a.* Immune from any suit based upon strict liability in tort or breach of implied warranty of merchantability which arises solely from an alleged defect in the original design or manufacture of the product.

Iowa Code § 613.18(1)(*a*).

Plaintiff urges that section 613.18(1)(*a*) does not apply to his strict-liability and breach-of-implied-warranty-of-merchantability claim. He contends that defendants were assemblers of the olives at issue here, thus removing them from the immunity provisions of the statute. The assembling occurs, he asserts, when defendants remove bulk olives from drums and repackage them in jars. We disagree that this repackaging process excludes defendants from the immunity granted by the statute.

We are convinced that the assemblers' exclusion contained in section 613.18(1)(*a*) is aimed at those situations in which an assembling process has some causal connection to a dangerous condition in the product that gives rise to a strict-liability claim or a product condition that constitutes a breach of an implied warranty of merchantability. Because the repackaging of the olives by defendants did not contribute to the condition that underlies plaintiff's product-liability claim, defendants are afforded the immunity granted by the statute.

In the alternative, plaintiff argues that section 613.18(1)(*a*) does not apply because olives are not a "product" as that term is used in that statute. This argument is premised on his assertion that a product is something that has been produced by human action. He contends that no human action has produced the olives that defendants import and sell. In his written argument, plaintiff states this point as follows:

No producer can mix ingredients or connect component pieces in order to create an olive. The creation of an olive is a

phenomenon of nature over which no human can exercise control or influence. Thus, olives are neither assembled, designed, nor manufactured.

To the contrary, we are reasonably certain that human effort does play a role in the growing and commercial distribution of olives. A standard legal dictionary defines "product" as follows:

> Something that is distributed commercially for use or consumption and that is usually (1) tangible personal property, (2) the result of fabrication or processing, and (3) an item that has passed through a chain of commercial distribution before ultimate use or consumption.

Black's Law Dictionary 1225 (7th ed. 1999). We are satisfied that agricultural commodities may be products as that term is used in section 613.18(1)(*a*). That statute is aimed at situations giving rise to product liability actions, and food products may produce such claims. *See* Restatement (Third) of Torts: Product Liability § 7 (1998) (one engaged in the business of selling or distributing food products is subject to liability for harm to persons caused by defective product). Consequently, the district court did not err in applying that statute to bar plaintiff's strict-liability and breach-of-implied-warranty-of-merchantability claims.

### III. *Express Warranty.*

Plaintiff urges the words "minced pimento stuffed," contained on the label of the jar of olives, constituted an express warranty that the olives had been pitted. Iowa Code section 554.2313(1) provides that an express warranty is created by the following:

> *a.* Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain . . . .
> *b.* Any description of the goods which is made part of the basis of the bargain . . . .

Although both the express-warranty and implied-warranty provisions of the U.C.C. are drafted so as to determine the rights and obligations of the immediate parties to a sales transaction, the Code also provides:

> A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty.

Iowa Code § 554.2318. Under the facts of the present case, plaintiff falls within this class of extended beneficiaries.[3] Official comment 5 to accompanying U.C.C. section 2-607 (Iowa Code § 554.2607) states that remote buyers falling within this class of beneficiaries are not required to give the notice to seller that is otherwise required by section 554.2607(3)(*a*). This was the holding in *McKnelly v. Sperry Corp.*, 642 F.2d 1101, 1107 (8th Cir. 1981) (applying Iowa law).

The vice president of quality control for defendants testified in his deposition that olives must be pitted in order to be stuffed because the pitting process provides the cavity in which the pimento stuffing may be placed. This witness also testified that

> [t]here's a reasonable expectation that most of the pits would be removed, and there's some expectation that it's not a perfect world, and some of the pits or fragments may not be removed. I think anytime you're dealing with natural products—see, this goes back to what we were talking about before. When the olives go into those machines, the machines do very well, but, you know, the olives have different shapes. And the reason they don't get pitted right all the time is because of the different shapes of the olives.

The witness asserted that, because large quantities of pitted and stuffed olives are received in bulk form, no practical method of inspection exists. This witness's statements concerning the inevitability of some pits or pit

---

[3]These beneficiaries do not include remote buyers seeking economic-loss damages. *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 108 (Iowa 1995); *Beyond the Garden Gate, Inc. v. Northstar Freeze-Dry Mfg., Inc.*, 526 N.W.2d 305, 309 (Iowa 1995).

fragments being in the product was corroborated by plaintiff's own assertion that United States Department of Agriculture standards for pitted olives allow 1.3 pits or pit parts per one hundred olives.

Comment 7 of the official comments that accompany U.C.C. section 2-313, from which Iowa Code section 554.2313 is taken, states:

> Of course, all descriptions by merchants must be read against the applicable trade usages with the general rules as to merchantability resolving any doubts.

U.C.C. § 2-313 cmt. 7. In discussing this official comment of the U.C.C. drafters, a federal court has declared: "[E]xpress warranties . . . must be read in terms of their significance in the . . . trade and relative to what would normally pass in the trade without objection under the contract description." *Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.*, 428 F. Supp. 364, 373 (E.D. Mich. 1977). Given the evidence of how the defendants receive and resell these olives, it is unrealistic to impart to the description "minced pimento stuffed" the meaning that defendants are guaranteeing that the olives in the jar are entirely free of pits or pit fragments. It is much more realistic to interpret the description as only warranting that the particular jar of olives contains pimento-stuffed, green olives that would pass as merchantable without objection in the trade. Plaintiff has provided no evidence that the contents of the jar, taken as a whole, did not live up to this warranty. The district court did not err in denying plaintiff's claim based on express warranty.

## IV. *Negligence.*

Much of the argument of both parties with regard to plaintiff's negligence claim turns on the decision in *Brown v. Nebiker*, 229 Iowa 1223, 296 N.W. 366 (1941). In that case, the plaintiff's decedent, a restaurant patron, swallowed a bone while eating a pork chop. The bone lodged in his

esophagus and complications from the surgical removal that followed led to the patron's death. The patron's personal representative sued the restaurant owner on theories of implied warranty and negligence. At the trial, several witnesses testified that they had ordered pork chops at the same restaurant on the same evening and that the pork chops were served with the bone left intact.

The district court directed a verdict for the defendant on both the warranty and negligence claims. On appeal this court held that the common-law warranty that flows to patrons of a restaurant protected them against food that was unfit for human consumption and against having foreign objects in the food. The court held that pork chops served with the bones in were not unfit for human consumption and that, because bones are naturally contained in pork, they do not constitute a foreign object. On the negligence claim, we indicated that a restaurant owes no duty to its patrons to serve meat that is entirely free of bones that are natural to the product.

In seeking to overturn the district court's grant of summary judgment on his negligence claim, plaintiff urges that, irrespective of its natural components, a food product may be marketed in a manner in which the consumer's reasonable expectations will be that certain natural components of the product have been removed. He asserts that this is the case with respect to the pimento-stuffed olives at issue in the present case.

Defendants seek to uphold the district court's summary judgment by espousing the virtues of *Brown v. Nebiker*'s pronouncements concerning consumer expectations as to the natural components of food products. They argue in their brief, "[s]urely there is no one who does not recognize, if he thinks at all, that natural products may well be present, such as bones in fish and meat and pits in olives and seeds in oranges."

We are unable to attribute any more to the *Brown v. Nebiker* decision than a recognition that, when pork chops are served in their natural state with the bone left in the meat, the presence of bone fragments must be anticipated. The opinion sheds little light on the requirements placed on a seller of food products in various stages of preparation or processing. We share the views expressed by the Wisconsin Supreme Court with regard to this matter:

> The "foreign-natural" test . . . does not recommend itself to us as being logical or desirable. It is true one can expect a T-bone in T-bone steak, chicken bones in roast chicken, pork bone in a pork chop, pork bone in spare ribs, a rib bone in short ribs of beef, and fish bones in a whole baked or fried fish, but the expectation is based not on the naturalness of the particular bone to the meat, fowl, or fish, but on the type of dish served containing the meat, fowl, or fish. There is a distinction between what a consumer expects to find in a fish stick and in a baked or fried fish, or in a chicken sandwich made from sliced white meat and in roast chicken. The test should be what is reasonably expected by the consumer in the food as served, not what might be natural to the ingredients of that food prior to preparation.

*Betehia v. Cape Cod Corp.*, 103 N.W.2d 64, 68-69 (Wis. 1960). Other courts espousing this view include *Zabner v. Howard Johnson's, Inc.*, 201 So. 2d 824, 826 (Fla. Ct. App. 1967); *Phillips v. Town of West Springfield*, 540 N.E.2d 1331, 1332-33 (Mass. 1989); *O'Dell v. DeJean's Packing Co.*, 585 P.2d 399, 402 (Okla. Ct. App. 1978). It is also the view expressed in Restatement (Third) of Torts: Product Liability section 7, comment *b* (product danger to be determined by reference to reasonable consumer expectations within the relevant context of consumption).

We find the principle applied by the Wisconsin court in *Betehia* with respect to restaurant food to be equally applicable to situations involving processed foods contained in cans or jars. In *Bryer v. Rath Packing Co.*, 156 A.2d 442 (Md. Ct. App. 1959), a child's throat was injured by a chicken

bone while she was eating chow mein in a school cafeteria, which had purchased the chow mein in sealed cans from the defendant food processor. The trial court directed a verdict in favor of the defendant. In reversing that judgment, the Maryland Court of Appeals stated:

> The obligation of the packer of food to the ultimate consumer is to exercise such care in its preparation that the product will not cause injury to the consumer, and the amount of care that is required is commensurate with the danger to the life or health of the consumer that may foreseeably result from such lack of care. In the instant case the packer of the chicken set its own standard of care and increased the necessary amount of care by expressly representing on the cans sold that the product was ready to serve and boned. By its advertising it was saying to the ultimate consumer that this was chicken from which the bones had been removed, and this assurance which it must have foreseen would be relied on (as indeed it was in the case before us, as the cafeteria manager explicitly testified), required it to exercise as much care as would enable users to rely with reasonable safety on the assurance. This is not to say that the packer was an insurer, for it is clear, and agreed, that in the form of action brought it is not. The question is whether due care was exercised under the circumstances.

*Bryer*, 156 A.2d at 446. Similar reasoning was applied in *Wood v. Waldorf System, Inc.*, 83 A.2d 90, 93 (R.I. 1951), a case involving a chicken bone in a can of chicken soup.

We are satisfied that, in the case of processed foods, consumers may develop reasonable expectations that certain components of food products in their natural state that serve to impede human consumption will be removed. Specifically, we believe that the purchaser of pimento-stuffed olives may reasonably anticipate that the olive pits have been removed. We need not decide whether this expectation would create an implied warranty of merchantability because such a claim is precluded by statute in the present case. We are convinced, however, that a seller of stuffed olives must be cognizant that consumers will assume that the olives will be free from pits and act on that assumption in consuming the product.

Consistent with that expectation, a seller must exercise reasonable care to assure that this expectation is realized. The district court erred in rejecting plaintiff's negligence claim by reliance on the natural component principle that was applied in *Brown v. Nebiker*.

In reviewing the motion papers to ascertain whether issues of material fact otherwise remain concerning plaintiff's negligence claim, we are satisfied that it does not appear that defendants were in any manner negligent in the processing of the olives that contained the pit that caused harm to the plaintiff. We conclude, however, that a genuine issue of material fact does exist with respect to plaintiff's claim that defendants were negligent in not warning against the possible presence of pits or pit fragments in the jar of olives.

Defendants' quality control officer testified in his deposition that the pitting process is not one hundred percent effective. He indicated that the presence of an occasional pit or pit fragment in the stuffed olives is inevitable because the machine that does the pitting will fail to remove a pit if the olive has an abnormal shape. Given this circumstance, we conclude that a trier of fact might find that reasonable care by a wholesale seller of stuffed olives would include providing a warning on the label that pits or pit fragments might be encountered. A claim based on that theory should have survived summary judgment.

We have considered all issues presented and conclude that the district court's ruling dismissing the strict-liability claim and the claims based on express and implied warranty should be affirmed. The ruling dismissing the negligence claims on theories other than a failure to warn is also affirmed. We reverse the ruling dismissing the negligence claim based

on a failure to warn and remand the case to the district court for further proceedings on that claim.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**