# IN THE COURT OF APPEALS OF IOWA

No. 24-0611
Filed May 21, 2025


**VAN OTEGHAM DAIRY PARTNERSHIP,**
    Plaintiff-Appellant,

**vs.**

**SPAHN & ROSE LUMBER COMPANY,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Iowa County, Justin Lightfoot, Judge.


Van Otegham Dairy Partnership appeals from the district court's ruling granting Spahn & Rose Lumber Company's motion for summary judgment. **REVERSED AND REMANDED.**


Steve Eckley of Eckley Law PLLC, Des Moines, for appellant.

Kevin J. Caster, Jaime C. Watts, and Eric P. Martin of Shuttleworth & Ingersoll, Cedar Rapids, for appellee.


Considered without oral argument by Tabor, C.J., and Ahlers and Sandy, JJ.

**SANDY, Judge.**

Van Otegham Dairy Partnership (VODP) appeals from the district court's ruling granting Spahn & Rose Lumber Company's (S&R) motion for summary judgment. VODP argues the district court erred (1) "in concluding that boilerplate fine print disclaiming responsibility for materials selection nullified S&R's" (a) "express warranty to complete a workmanlike barn" and (b) "express agreement to design and build a dairy barn of good quality"; and (2) "because [the district court's] interpretation of the materials disclaimer violated the doctrine of expectations." We reverse the district court's ruling granting summary judgment as to counts one and four of VODP's amended petition and remand for further proceedings.

## I. Background Facts and Proceedings

VODP operates a dairy farm out of Victor, Iowa. VODP created plans to build an additional "free stall dairy loafing barn" in 2013. VODP's plans included requirements for specific features such as a large vehicle door, humidity-controlling fans, and an automatic manure flushing system. The new barn needed to be constructed in a way that prevented elevated levels of humidity from causing corrosion. VODP explained that those requirements differ from a "simple pole barn machine shed," which typically only houses equipment that does not create a humid environment. VODP asserted that "serious premature corrosion will occur in the roof of an animal confinement facility like the [proposed barn] that does not have . . . adequate corrosion protection."

With those requirements in mind, Chuck Van Otegham, a partner at VODP, sought to find a "turnkey" builder to construct the new dairy barn. Van Otegham

claimed to "[know] nothing about the design or building of a barn like this, or what materials would be required, or even what the process was. [His] intent was to find a competent builder, generally explain what [VODP] needed, and leave the rest up to them." After seeing an ad for S&R that prominently promoted the company's "OWN PROFESSIONAL DESIGN SERVICES TO CUSTOMIZE YOUR PROJECT," Van Otegham contacted the company and asked them to prepare a bid. S&R sales representative Tom Voigtman informed Van Otegham that S&R "had access to engineers" for design and confirmed that S&R "was capable of properly doing the work." Van Otegham never specified a preference for any particular subcontractors and provided no design guidance beyond interior dimensions for the barn.

The final proposal presented by S&R was handwritten within S&R's standard boilerplate form. The proposal was signed by Van Otegham and Voigtman, on behalf of VODP and S&R, respectively. The proposal included guarantees that S&P would engage in "[c]onstruction of a 100' x 234' dairy loafing barn as per plans by L&L Sales Inc. and end elevations by Spahn & Rose LBR. Co." and that "[c]onstruction includes the material's [sic] as listed on estimate sheet's [sic] dated 6/7/13." Attached to the proposal was a materials list, which both parties agree was part of the proposal and resulting contract. That materials list disclaimed as follows:

> Please examine this list carefully. This list only set [sic] forth the articles, quantities, grades and prices of materials listed and we do not warrant that the materials, quantities, and grades listed will satisfy buyer's requirements. Buyer is responsible for determining his own requirements and selecting proper materials.

S&R subcontracted the construction and installation work to Country Boys Construction (CBC). The barn was subsequently finished later that year.

At some point within the following eighteen months, the barn roof began to leak. VOPD claims that the leaks caused "substantial losses to the dairy operation." A representative for the steel manufacturer determined that corrosion in the metal banding bracing the metal roof caused the leaking. The parties agree that eighteen months is premature for corrosion damage, which should last twenty-five to thirty years according to S&R's expert witness. The parties also agree there is no evidence that any of the materials were defective. In his affidavit, Bennie Borntrager, the sole member of CBC, asserted that using metal banding in contact with metal roofing is not an accepted practice for the type of barn VODP contracted for, that he had never seen metal banding used in that manner for a dairy farm, and that he constructed VODP's dairy barn with those materials because that is what S&R provided him. S&R did not provide any materials or instructional design that would have allowed for a gap between the metal banding and the metal roof, such as rubber, vinyl, or some form of gasket.

VODP filed this suit in March 2022, alleging breach of express warranty, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of workmanlike construction, and breach of contract against S&R. S&R filed a motion for summary judgment in May 2023, arguing the statute of limitations prohibited VODP's claims for breach of implied warranty of fitness for a particular purpose (count two) and breach of implied warranty of workmanlike construction (count three). That motion was granted. S&R then filed its second motion for summary judgment in January 2024, arguing VODP had failed to show a genuine

issue of material fact supporting its breach of express warranty (count one) and breach of contract (count four) claims. The district court granted that motion in March.

In its summary judgement order, the district court found that there was an express agreement to complete work in a "good and workmanlike manner" and to "produce definite and certain results." But it also found that the materials list disclaimer modified any such express warranty because the "amended petition contends that [VODP]'s damages were caused by the material choices made by [S&R, and] a finding that the contract places the responsibility to choose materials on [VODP] would be fatal to counts one and four."

VODP now appeals.

## II. Standard of Review

"Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Kolarik v. Cory Intern. Corp.*, 721 N.W.2d 159, 162 (Iowa 2006). We review summary judgment rulings for correction of errors at law. *Susie v. Family Health Care of Siouxland, P.L.C.*, 942 N.W.2d 333, 336 (Iowa 2020). We view the record "in the light most favorable to [VODP]." *Id.* at 337.

## III. Discussion

VODP argues the district court erred (1) "in concluding that boilerplate fine print disclaiming responsibility for materials selection nullified S&R's" (a) "express warranty to complete a workmanlike barn" and (b) "express agreement to design and build a dairy barn of good quality"; and (2) "because [the district court's] interpretation of the materials disclaimer violated the doctrine of expectations."

VODP's construction contract with S&R contained a provision stating that "[a]ll work is to be completed in a workmanlike manner according to standard practices." VODP argues the district court erred in finding the materials list disclaimer nullified both that express warranty and S&R's express warranty to "provide a design, materials, and construction process that would be consistent with the [p]arties' intent that [VODP] would end up with a barn of good quality."

Our court has interpreted the phrase "a good and workmanlike manner" in a construction contract to mean the builder should "produce definite and certain results." *Reilly Const. Co. v. Bachelder, Inc.*, No. 14-0817, 2015 WL 1331634, at *6 (Iowa Ct. App. Mar. 25, 2015) (citation omitted). Incompatibility of building materials in a structure invokes the builder's warranty to build the structure "in a reasonably good and workmanlike manner, fit for the purpose intended." *Kirk v. Ridgway*, 373 N.W.2d 491, 492 (Iowa 1985) (cleaned up). An express warranty can be modified by "words or conduct tending to negate or limit warranty." Iowa Code § 554.2316(1) (2013).

In our view, the factual issues that are in dispute have been confused. The parties agree that the roof and metal bandings began to corrode long before they should have. Neither party argues that the materials used were inherently defective. VODP does not argue that the banding or roofing materials should not have been used or that metal banding and metal roofing cannot concurrently be used in a dairy barn.

Thus, VODP's arguments involving failure of those parts would center on design and construction flaws, not materials flaws. Such incompatibility invokes the builder's warranty to build a structure in a reasonably good and workmanlike

manner.  *See Kirk*, 373 N.W.2d at 492.  The fact that a design or construction flaw manifests itself through a breakdown in the materials does not in itself imply a problem with the materials list.  High-quality, appropriate materials can be damaged by poor workmanship (i.e., installation) or project design.  And because the roof and banding materials—if touching—would have rusted regardless of their quality, the design and installation were clearly incompatible with the intended purpose of this specific dairy barn.  That is, a dairy barn that doesn't rust and leak.

Yet S&R neveretheless argues that any corrosion of the barn's materials would be subject to the materials disclaimer.  That interpretation leads to absurd possibilities.  If S&P used all the same materials but purposefully built a barn with large holes in the roof, and the presence of those holes caused corrosion, would the express warranties for a workmanlike product and good design and construction still be nullified?  If so, the materials disclaimer would fully absolve S&R of any brazen failures in design and construction, because any such failures would inherently involve the materials in some manner.  That interpretation would render the parties' decision to include the express warranties completely superfluous.  *See* Iowa Code § 554.2316 ("[W]ords or conduct tending to negate or limit [an express] warranty shall be construed wherever reasonable as consistent with each other.")

S&R appears to recognize the flaw in that argument and consequently spills significant ink defending the district court's order on grounds the district court did not rule upon.  In S&R's view, it should not be held liable for defective design because it was not contracted to provide design services.  But the district court did not grant summary judgment on that basis.  The district court never found that S&R

did not provide design services. And as we have already emphasized, the phrase "a good and workmanlike manner" in a construction contract means the builder should "produce definite and certain results." *See Reilly Const. Co.*, 2015 WL 1331634, at *6 (citation omitted). Here, those definite and certain results were to complete the construction of a dairy barn in a workmanlike manner. Of note, the contract for services had no disclaimer relative to design and installation.

Whether S&R was contracted to provide design services and the degree to which its failure to construct a workmanlike barn implicates its status as a designer is not relevant to the issue of the materials disclaimer's effect on S&R's express warranties. Instead, these issues demonstrate that there is a factual dispute over the scope of VODP's express warranty claims. It is true that the contract did not expressly guarantee a specific design. But it is also true that S&R held itself out as a design provider, expressly warrantied that it would construct a barn fit for dairy production, knew VODP had no design knowledge, and did, in fact, design the defective roof banding. VODP and S&R disagree as to whether S&R holds responsibility for the design/installation flaws causing the breakdown of materials in VODP's dairy barn. Viewing these facts in the light most favorable to VODP, the materials disclaimer provides no impediment to VODP's claims on counts one and four. That is, the claim is not that the materials were defective, or even that they were the wrong materials, but how they were installed. It's how they were used not what was used.

On the record before us, we find a genuine factual dispute exists that should be left to the factfinder and cannot be resolved on summary judgment. Because we can decide this appeal on VODP's primary arguments, we need not address

whether the contract was a contract of adhesion subject to the doctrine of reasonable expectations.

**IV. Conclusion**

We accordingly reverse the district court's order dismissing counts one and four.  We remand to the district court for further proceedings.

**REVERSED AND REMANDED.**